**Continental Casualty Company, Appellant, v. New Amsterdam Casualty Company, Appellee.**

**Gen. No. 48,092.**

First District, Second Division.
December 20, 1960.

Vincent J. Biskupic, of Chicago, for appellant.

Jacobs, Miller & Lederleitner, of Chicago (John L. Rosshirt, of counsel) for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Continental Casualty Company (Continental) brought suit against New Amsterdam Casualty Company (Amsterdam) to recover a portion of money paid by Continental in settlement of a claim which was asserted against Cyrus Collins, the insured of both companies. The case was heard on the pleadings and motions for summary judgment. The court granted Amsterdam's motion, denied Continental's, and entered the judgment from which Continental appeals.

There is substantial agreement as to the facts presented in the pleadings and affidavits. The controversy arises solely as to the interpretation of the two policies. It appears that Cyrus Collins purchased an automobile liability insurance policy from Amsterdam. The policy period ran from May 7, 1955 to May 7, 1956. The limit of personal injury liability was $100,000.00 for each person, and $300,000.00 for each accident; the property damage limit was $5000.00. The policy specifically describes two Nash automobiles but provides, under Clause V, that it will cover the insured while he is driving "any other automobile." Condition 12 of the Amsterdam policy, entitled "Other Insurance," provides in pertinent part: ". . . the insurance with respect to . . . other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise."

Collins was a resident of New York. On August 31, 1955, while the policy was in effect, he rented a car

from Couture National Car Rental System which carried an excess driverless car liability policy with Continental. While driving the rented auto in Hialeah, Florida, he struck the rear of an auto being driven by Joseph Gural, who had stopped his car at an intersection in obedience to a red traffic signal. Collins failed to see Gural's car as he approached the intersection. Amsterdam concedes that the accident occurred through Collins' negligence and that Gural was not guilty of contributory negligence. As a result of the collision Gural was injured, hospitalized, and unable to work for three months with a resultant loss in wages of $1500.00 His medical bills totaled $317.40, and the repairs to his car amounted to $251.00. An adjuster for Continental interviewed Collins in October 1955 and obtained a signed statement from him; after making a thorough investigation, Continental settled Gural's claim against Collins for $3500.00 and obtained a general release. Amsterdam admits that this settlement was entered into in good faith and was not excessive.

Having determined that Amsterdam was Collins' insurer, but not knowing the terms or limits of the Amsterdam policy, Continental brought this suit seeking reimbursement for a proportionate share of the money paid to Gural in settlement of his claim against Collins. Amsterdam has never answered the statement of claim; instead, it presented a motion for summary judgment. Attached to the motion is a copy of Amsterdam's policy, and an affidavit which consists of a restatement of many of the facts set out in Continental's statement of claim. None of the factual allegations are controverted.

Continental presented a cross-motion for summary judgment, reducing the ad damnum to $1708.16. Attached to the motion was its policy, and the affidavit of its attorney which restates the factual allegations of the complaint. The affidavit alleges that, having

491

discovered the terms and limits of Amsterdam's policy, Continental believes it is entitled to a total of $1708.16 from Amsterdam, the computation representing $1624.-50 as one-half of the amount paid to Gural for personal injuries and $83.66 as one-third of the amount paid him for property damage. After the motions for summary judgment had been simultaneously filed, Amsterdam was granted leave to amend its original motion; it alleged that Continental is estopped from asserting a subrogation claim against Amsterdam because it settled Gural's claim without the consent or approval of either its named insured, Collins, or Amsterdam. In opposition to Amsterdam's amended motion, Continental filed an affidavit averring that, at the time it settled with Gural, Continental had no knowledge of the terms of Amsterdam's policy. The Amsterdam and Continental policies are the same with respect to "other insurance" provisions; both provide that the insurance with respect to other automobiles shall be "excess insurance" over any other valid and collectible insurance available to the insured.

In the judgment entered, the court completely absolved Amsterdam from liability despite the fact that Amsterdam's policy contains the same provisions as Continental's with respect to "other insurance." The question presented is whether this holding is in consonance with current decisions in cases where the same issue, under similar policies, was presented. Counsel agree that the question is one of first impression in courts of review of this State, but the attorney for Continental cites and discusses eight decisions in other jurisdictions, including one by the Fifth Circuit Court of Appeals involving an accident in Florida, the situs of the accident in the case at bar. It is urged by Continental that the holding in the instant case runs counter to the unanimous opinions of courts of other jurisdictions which have recently been presented with the

issue here raised; that within the past decade every appellate court in this country, when confronted with two policies containing "excess coverage" clauses—often identical to those here involved—has ordered each company to pay a pro rata share of the judgment or settlement.

Oregon Auto Ins. Co. v. United States Fidelity & Guar. Co., 195 F.2d 958 (9th Cir. 1952), is the leading case on the subject. The driver, while operating a rented car, became involved in an accident, and ultimately a judgment was rendered against him. The driver's insurance policy and that of the car rental agency each provided that it was not applicable if other insurance was available to the insured. The court, thus confronted with the same legal question here presented, introduced the problem with the following comment (p. 959); "It is plain that if the provisions of both policies were given full effect, neither insurer would be liable. The parties admit that such a result would produce an unintended absurdity, and each argues that the court must settle upon some way of determining which policy is primary and which secondary." One of the parties argued that the first policy in point of time should bear the entire loss, but the court rejected this argument with the following comment (p. 960): "In our view it is immaterial which policy was written first; each was in effect when the accident occurred. The two policies appear to us to be equally specific, and no difficulty whatever would be encountered in applying either to the facts if the other did not exist." After discussing prior divergent opinions on this issue, the court concluded (p. 960): "In our opinion the 'other insurance' provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an 'other insurance' provision, the rule is to hold the two

insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. Here, where both policies carry like 'other insurance' provisions, we think [they] must be held mutually repugnant and hence be disregarded. Our conclusion is that such view affords the only rational solution of the dispute in this case. The proration is to be applied in respect both of damages and of the expense of defending the suits."

The rationale of the Oregon Auto case is followed in Continental Cas. Co. v. St. Paul Mercury Fire & Marine Ins. Co., 163 F. Supp. 325 (S. D. Fla. 1958), wherein the court ordered proration in proportion to the total policy limits, as Continental requests in this case. In Factory Mut. Liability Ins. Co. of America v. Continental Cas. Co., 267 .F.2d 818 (5th Cir. 1959), a per curiam decision affirming a judgment rendered by the Federal District Court for the Southern District of Florida, in which the facts were similar to those in the case at bar, the court, referring to the Continental case, stated (p. 820) that it was "in full agreement with the district court's earlier opinion," on which the district court had relied as precedent in the Factory case.

Recently, the Supreme Court of New Jersey adopted the rule of the Oregon Auto case in Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N. J. 554, 147 A2d 529 (1959). There the Continental policy was exactly the same as that in the case at bar and was also like the Amsterdam policy. Many conflicting decisions are discussed (pp. 532–533), after which the court concluded (pp. 533–534) : "The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies

494

and each company is obligated to share in the cost of the settlement and expenses. We think that such a conclusion affords the only rational solution of the present dispute." Again, in Arditi v. Massachusetts Bonding & Ins. Co., 315 S.W.2d 736 (Mo. 1958), wherein two "excess insurance" policy provisions were involved, the driver's personal insurer contended that the car owner's policy was primary, while the driver's was excess. The court rejected that contention because (p. 743) it "depends upon the premise that the car owner's insurance is always primary and we [do] not think this is always true, . . ." The court expressly adopted the Oregon Auto rule and approved the trial court's proration between the insurers.

Last year the same rule was adopted by the Supreme Judicial Court of Massachusetts in Beattie v. American Automobile Ins. Co., 156 N.E.2d 49 (1959). The policy provisions were substantially the same as in the case at bar. Again, in the recent case of Reetz v. Werch, 8 Wis.2d 388, 98 N.W.2d 924 (1959), a similar excess coverage provision of a Continental policy was involved. The court commented (p. 926) that an attempt "to give effect to both [excess coverage] clauses puts one on a perpetual mental merry-go-round" and pertinently inquired: "Is there any rational basis for determining that effect should be given to one of the excess clauses and not to the other?" They thought not, and reached "the only remaining alternative of giving effect to neither." After enumerating various criteria considered by the courts, i. e., which policy was issued first, which was more specific, and which named insured was primarily liable, the Wisconsin court said that it agreed with the Oregon Auto rule that "each of these criteria is a 'relatively arbitrary circumstance.' "

An analysis of the issues and decisions pertaining to the question here presented is found in Continental

Cas. Co. v. Buckeye Union Cas. Co., 143 N.E.2d 169 (Ct. Com. Pleas, Ohio, 1957), which characterizes and discusses policies involving "escape" and "pro rata" provisions (which are not involved in the case at bar), as well as "excess coverage" provisions. "The difficulties in interpretation have arisen," said the court (pp. 174–175), "when *both* policies contained 'Other Insurance' clauses. These seem to fall into three general types: (a) a provision to the effect that in the event of other insurance, the loss shall be borne pro-rata dependent upon the monetary limits of coverage, which will hereafter be referred to as the pro-rata clause; (b) a provision that the policy shall be excess over any other valid and collectible insurance applicable to the liability, hereafter referred to as the excess clause, and (c) a provision that if there is other valid and collectible insurance the policy shall not apply, hereafter referred to as the escape clause. Thus it is apparent that cases of 'double insurance' have and will continue to arise involving pro-rata vs. excess, pro-rata vs. escape, excess vs. escape, excess vs. excess and escape v. escape." Since both policies provided for 'excess' insurance, the solution, the court held (p. 180) should be based on the fact that "there can be no 'excess' insurance in the absence of a 'primary insurance,' " and it must follow that "since neither policy by its terms is a policy of 'primary' insurance, neither policy can *operate* as a policy of 'excess' insurance. The policies are not changed. The 'excess' provisions of the policy merely are inoperative as being impossible of accomplishment in the same way that such excess provisions are inoperative if there is no other insurance in effect. . . . having concluded that *neither* 'excess' feature is *operative* in the absence of 'primary' insurance (not court created 'primary' insurance but 'primary' insurance under the specific terms of the other policy), we necessarily conclude that each is pro-rata liable within the monetary limits of its policy for

496

any damages and likewise is obligated to share pro-rata in the expense of defense." (Emphasis that of the Ohio court.)

In its brief, Amsterdam replies to only two of the eight cases cited in Continental's brief and ignores the other six. It attempts to distinguish the Oregon Auto case by pointing out that there the court was called upon to consider an escape v. excess situation, but in our view the case stands as applicable authority here because the court resolved the problem as though two excess clauses were involved. "In our opinion," it said (p. 960), "the 'other insurance' provisions of the two policies are indistinguishable in meaning and intent." In the Buckeye Union case the other insurance provisions relied on by the insurers are substantially similar to each other and to those in the policies before us for consideration. To attempt a differentiation would be to put the emphasis on a semantic theoretical approach rather than on a legal realistic approach.

As we read Amsterdam's brief, defendant apparently relies on cases involving the "escape-excess," "escape-pro rata," or "excess-pro rata" situations, but these cases are not relevant to the "excess-excess" problem presented in the case at bar. Such provisions are not involved in this proceeding, and the differences, as pointed out in the Buckeye case, are important and serve to nullify as authority in this case the decisions relied on by Amsterdam. It cites no cases involving "excess-excess" provisions such as appear in the case at bar.

■ The rationale of the decisions heretofore discussed as supporting Continental's position is that (1) each policy standing alone extends coverage to the insured for the occurrence in question; (2) the clauses providing that each policy is to be considered "excess" insurance over any other insurance available to the insured are directly and mutually repugnant and should therefore be disregarded; and (3) each com-

497

pany is liable for a pro rata share of the judgment or settlement, usually for that per cent of the liability which its policy limits bear to the total limits available to the insured. In our opinion, these cases leave no room for doubt that the trial court erred in completely absolving Amsterdam of liability under its policy, despite the fact that its policy contained the same provisions as Continental's in so far as the claim asserted against Collins is concerned. This holding runs counter to the decisions of other jurisdictions which we consider to be well reasoned and which ought, accordingly, to be followed in Illinois.

■ Lastly, there is no validity to the contention which is made but not argued by Amsterdam—that Continental is estopped from asserting a subrogation claim because it settled without the consent or approval of either its named assured, Collins, or Amsterdam. It appears from the pleadings and is not disputed that when Continental settled with Gural it had no knowledge of the terms of the Amsterdam policy, and since the settlement is admitted to have been made in good faith and on reasonable terms, Amsterdam's position is untenable. It was Continental that first recognized its obligations, and as the court said (p. 937) in American Surety Co. v. Canal, 258 F.2d 934 (4th Cir. 1958): "Losses should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duties is allowed to escape."

For the reasons indicated, the judgment of the Municipal Court is reversed, and the cause remanded with directions to grant Continental's motion for summary judgment.

Judgment reversed, and cause remanded with directions.

BURKE, P. J. and BRYANT, J., concur.