FARMERS INSURANCE EXCHANGE,
Appellant (Garnishee below),

v.

FIDELITY & CASUALTY COMPANY OF
NEW YORK, Appellee (Garnishee below),

Marietta J. Arnold, Administratrix of the
Estate of Cecil S. Arnold, Deceased,
(Plaintiff below),

L. A. Crofts, Administrator of the Estate
of Glen W. Chapman, Deceased,
(Defendant below).

No. 3045.

Supreme Court of Wyoming.

Sept. 27, 1962.

Edward E. Murane, of Murane, Bostwick & McDaniel, Casper, for appellant.

W. J. Wehrli, Casper, for appellee.

Before PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The problem before us in this case is to determine the extent of insurance coverage on the part of two insurance companies and to decide whether a judgment previously obtained should be paid in its entirety by Farmers Insurance Exchange, appellant, or whether a pro rata share of such judgment should be paid by Fidelity & Casualty Company, appellee.

The judgment involved is in the amount of $31,884.85. It was obtained by the administratrix of the estate of Cecil S. Arnold, who was killed in an automobile accident with Glen W. Chapman. Chapman was also killed in the accident.

At the time of the accident Chapman was employed as a salesman by Platte Valley Paint & Glass Co., Inc. His employer was leasing a Mercury automobile from Meyers Lease & Rent Company for the use of Chapman. The Mercury had become in need of repairs, and the rental company leased Chapman's company a Ford automobile in place of the Mercury, while the Mercury was being repaired. This Ford was being driven by Chapman when the accident occurred.

Upon execution, both insurance companies were garnisheed. The district court found that Farmers-company had primary coverage and that it should pay the entire judgment. Contending that its coverage is on a par with the coverage of Fidelity-company and that Fidelity should pay a pro rata share, or one-third of the judgment, Farmers has appealed.

The policies of both companies are before us and there is no material dispute on the facts. Our decision therefore involves a construction of these respective policies and nothing more.

Both policies were issued to the employer, Platte Valley Paint & Glass Co., Inc. Farmers insured the Mercury mentioned above; Fidelity insured four automobiles owned by Platte Valley and hired automobiles, "if any." There was a premium charge for hired automobiles. Each insurer accepts the fact that Chapman was using the Ford with proper permission, and that he came within the definition of "insured" as defined in its policy.

*Farmers' Policy*

The Farmers policy describes a substitute automobile thus:

"A 'substitute automobile' is an automobile which is temporarily used for the described automobile while such automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

With respect to other insurance, the Farmers policy specifies in item 17 of conditions that under certain coverages, including bodily injury liability and property damage coverages, Farmers shall not be liable for a greater proportion of any loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all collectible insurance against such loss. Then follows this pertinent provision in the same item:

"With respect to a substitute or nonowned automobile, Coverages A, B, E and F shall be excess insurance over any other collectible insurance of any kind available to the insured."

Coverage A in the policy is bodily injury liability and coverage B is property damage. Coverages E and F are not involved in this case.

It should be noted at this point that the last-quoted provision applies both to a substitute and nonowned automobile. Fidelity takes the position that the Ford was nonowned and not a substitute; that a certain endorsement (115–A) makes it the same as if it were owned; that since there is no substitute and since the nonowned vehicle is to be considered as if it were owned, then this provision is vitiated and made to have no effect.

*Fidelity's Policy*

Regarding the pertinent policy provisions of the Fidelity policy, it is specified that

the word "insured" includes, under coverages A and B (bodily injury liability and property damage) any person while using an owned automobile or a hired automobile, provided the actual use is by the named insured or with his permission. Under this provision Fidelity recognizes and does not deny that Chapman was covered while driving the Ford involved in the accident, except that it claims this insurance is excess insurance.

As to other insurance, the Fidelity policy provides in item 14 of conditions that if the insured has other insurance against a loss covered by its policy, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss. Then follows this proviso:

> " * * * provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

There is no dispute on either side of the fact that the accident-involved vehicle was hired and that it was insured under Fidelity's policy on a cost of hire basis.

### Farmers' Liability

The Farmers policy shows on its face that it covers the Mercury referred to above as the "described automobile." It is stipulated in the policy that the "described automobile" means the automobile described in the policy and includes a substitute automobile. Hence, the policy covered the Ford by reason of the fact that it was a substitute automobile and the described automobile includes a substitute automobile.

However, according to item 17 of conditions, which is set out above, it is specified in language that is unambiguous that, with respect to a substitute automobile, coverages A, B, E and F shall be "excess insurance"

over any other collectible insurance of any kind available to the insured. As already indicated, we are concerned only with coverages A and B.

Thus, Farmers, by its own policy, has limited its liability as to bodily injury liability and property damage, on a substitute automobile, to excess insurance. We could not if we would increase that liability or give it a different status.

### Fidelity's Liability

It would appear that there is a certain uniformity in insurance policies. While different forms are used and the language varies, it seems that provisions, as far as effect is concerned, end up being quite standard. Therefore it is not surprising to find that the two policies in this case are for all practical purposes identical in their coverages, definitions, exclusions, conditions and general provisions. They do differ of course in the amounts of insurance provided.

Instead of the Ford being covered under the Fidelity policy as a substitute automobile, it is covered as a hired automobile. However, the liability on a hired automobile insured on a cost of hire basis is also limited to excess insurance. According to the proviso set out above from item 14, it is specified in unambiguous language that the insurance under this policy with respect to loss arising out of the use of any hired automobile insured on a cost of hire basis shall be "excess insurance" over any other valid and collectible insurance.

The first part of item 14 in the Fidelity policy, like the first part of item 17 in the Farmers policy, provides generally that the company shall not in any case be liable for a greater proportion of any loss than its limit of liability bears to all collectible insurance.

### Points in Dispute

Apparently the trial court found that the Farmers' policy constituted the primary coverage because it was written pursuant to the lease agreement which covered the Mercury automobile. According to that

agreement, Meyers Lease & Rent Company agreed to provide certain insurance on the Mercury. In fulfillment of this agreement it ordered the Farmers policy, having the insurance written in the name of Platte Valley. It is argued that this shows an intent to have the Farmers policy cover "vehicles" owned by the rental company and "non-owned" by Platte Valley, the Ford being such a vehicle.

Of course, the original lease agreement did not express any intention that the Ford was to be insured. It provided merely that insurance was to be provided by Meyers Lease on the Mercury. Moreover, the lease agreement between Meyers Lease and Platte Valley was in no way binding upon Farmers. We can look only to the applicable insurance policy to find what insurance Farmers afforded. We cannot assume that it intended to provide coverages not expressed in its policy.

█ In an action involving the respective liability of two automobile liability insurers, the question is to be determined from a construction of the language employed by the insurers in their respective policies. Continental Casualty Company v. American Fidelity & Casualty Company, 7 Cir., 275 F.2d 381, 384; Woodrich Construction Co. v. Indemnity Insurance Company of North America, 252 Minn. 86, 89 N.W.2d 412, 420-421. In the latter of these cases, it was added that the decision must not rest upon any so-called primary-tortfeasor doctrine or upon "any other arbitrary rule or circumstance."

In the following cases courts have refused to recognize a primary liability on the part of an insurer, where it was claimed that its policy had been written for a purpose indicating an intention to assume primary liability:

In Reetz v. Werch, 8 Wis.2d 388, 98 N.W.2d 924, 927, where it was sought to place primary liability on the insurer which covered "hired and non-owned" automobiles, while the other insurer covered "described automobiles";

In Citizens Casualty Company of New York v. Allied Mutual Insurance Company, 217 Md. 494, 144 A.2d 73, 77-78, and in Celina Mutual Casualty Co. of Ohio v. Citizens Casualty Co. of New York, 194 Md. 236, 71 A.2d 20, 22-24, 21 A.L.R.2d 605, where it was sought in each case to place primary liability on a policy which had been obtained to comply with the terms of a financial responsibility law, and where the court in the Celina case said "each [insurer] must be held bound by what it said [in its policy]";

And in Employers Liability Assur. Corp. of London, England, v. Pacific Employers Ins. Co., 102 Cal.App.2d 188, 227 P.2d 53, 55-57, where it was sought to place primary liability on the policy which covered owned cars, loaned cars and nonowned cars when driven by an employee of the Salvation Army, while the other policy excluded in its coverage automobiles owned or hired by the Salvation Army.

In the case at bar, we have already called attention to the fact that actually the Fidelity policy and not the Farmers policy specifically covered "hired automobiles," and provisions were made in its policy for premium charges on hired automobiles. The Ford was certainly a hired automobile.

It must be kept in mind that the insured, Platte Valley, did not own the Mercury which it was having insured by Farmers. In the absence of an apparent insurable interest, endorsement 115-A was attached which made the insurance provided by Farmers apply to the same extent as if Platte Valley had owned the Mercury. The net result was that the Mercury was insured for Platte Valley the same as if owned by it.

The pertinent provisions of 115-A are these:

"It is agreed that such insurance as is afforded by this policy shall apply to the named insured and spouse to the same extent as if either were the owner of the described automobile, while it

is registered in the name of Meyers Lease and Rent Company, Scottsbluff, Nebraska and is in the custody of the named insured, or is being used by others with the permission of the named insured.

\* \* \* \* \* \*

"It is further agreed that this policy shall not apply to any accident which occurs after the named insured has relinquished custodianship or bailment of the described automobile."

If Platte Valley had in fact owned the Mercury which we are talking about and had insured it with Farmers, no doubt Farmers would have furnished, as added coverage, protection on a substitute vehicle, such as the Ford which we are also talking about. In effect it would have said however, this added coverage on the substitute-vehicle will be secondary insurance, with excess liability only.

That is exactly what happens when I insure my own automobile. The insurance company carries primary liability on it. However, when I take that vehicle to a garage for repairs and drive away a substitute for the period of repairing, the insurance company's liability as to the substitute would be secondary, or only for the excess over other collectible insurance. We find Farmers' insurance policy in the case before us, with endorsement 115–A attached, accomplishing the same thing.

This endorsement, in the policy of Farmers, is limited to "such insurance as is afforded." Just as excess insurance only would be afforded for a substitute, if my own automobile is insured, so also excess insurance only was "afforded" when Platte Valley insured a Mercury and used a Ford as a substitute.

In making the argument that the Ford in this case is covered by Farmers as a non-owned automobile and not as a substitute automobile, Fidelity overlooks the fact that, if its theory were correct and carried to a logical conclusion, it would itself be paying the entire judgment with no help from Farmers. We have already pointed out

that in the Farmers policy the "described automobile" is made to include a substitute automobile. The adverse is true of a non-owned automobile. It is not included in the term "described automobile."

If we read 115–A with this thought in mind, we find in the last paragraph a clear provision to the effect that the policy shall not apply to any accident which occurs after the named insured (Platte Valley) has relinquished custodianship or bailment of the "described automobile." In that connection, it is undisputed in the evidence that the described automobile (Mercury) had been turned back to the owner, Meyers Lease, for repairs, and a new lease had been executed covering the Ford.

Thus, if the term "described automobile" in the last paragraph of the endorsement is thought of as including the Ford as a substitute, then the policy applies. But, if the Ford is thought of as a nonowned automobile so that there would no longer be a described automobile or substitute in the custody of the named insured (Platte Valley), then the policy would no longer apply and there would be no insurance at all as far as Farmers is concerned.

However, even stronger than our logic, are the words of the policy itself in settling once and for all the question as to whether the accident-involved Ford was a substitute automobile or nonowned automobile. In the definitions portion of Farmers' policy is a definition reading:

"The 'described automobile' means the automobile described in this policy and includes a substitute automobile and/or a newly acquired automobile."

Immediately following this definition are the definitions for "substitute automobile" and "newly acquired automobile." Then in the next succeeding paragraph is this definition:

"A 'non-owned automobile' is *any other automobile* except one owned by or furnished for the regular use of the named insured \* \* \*." (Emphasis supplied.)

From its definition then, it will be seen that a nonowned automobile must first satisfy the requirement of being "any other automobile" and not a described automobile, a substitute automobile or a newly acquired automobile. In the next place, a nonowned automobile must not be one that is "furnished for the regular use of the named insured." The Ford was surely so furnished.

In the early part of this opinion we quoted the definition of a "substitute automobile," which was to the effect that it is an automobile which is temporarily used for the described automobile while such automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. No description could more perfectly fit the Ford in this case than that description. We could not if we would indulge in a definition of our own for a substitute automobile. From the evidence adduced, the trial court specifically found that the Ford was being used by Chapman as a "substitute" for the Mercury. Its findings repeated again: "That said Ford was temporarily used by Chapman while the Mercury was being repaired by the owner."

■ It is true that Farmers' policy was issued prior to the issuance of the Fidelity policy, and there is some suggestion that this might give it primary responsibility. We consider it immaterial which policy was written first. The question as to which of two insurers is liable in a particular case is to be ascertained from a construction of the language employed by the respective insurers, and not by which of the insurers first assumed the risk. McFarland v. Chicago Exp., 7 Cir., 200 F.2d 5, 7; Oregon Auto. Ins. Co. v. United States Fidelity & Guaranty Co., 9 Cir., 195 F.2d 958, 960. See also Continental Casualty Company v. Buckeye Union Casualty Company, Ohio Com.Pl., 143 N.E.2d 169, 180.

Indeed, if the rule were otherwise, there would not be such a great number of cases holding in certain instances that because the excess insurance clauses of different insurers are mutually repugnant, the liability must be prorated. In almost all of those cases, liability could be resolved quickly and easily on the basis of policy dates, if that were the law, but it is not.

■ The appellee, Fidelity-company, insists the Farmers Exchange is in some way estopped, or at least adversely bound, by a statement in a letter written by its counsel to Fidelity saying that Farmers Exchange had undertaken the defense of its insured and that primary liability was carried by Farmers "on the vehicle involved in this accident." In the same letter, the writer explained that it was not known just what liability is involved insofar as your company's assured [Fidelity's assured] is concerned. Counsel for appellant, as author of the letter further explained in argument that he had not yet seen the Fidelity policy when the letter was written.

Additionally, it is clear from the policies that Farmers actually did carry the only collision coverage insurance on the vehicle itself, which was involved in the accident. Also, Farmers was obligated by its policy to defend its insured. Under these circumstances, no importance is attached to the statement relating to primary liability on the vehicle involved in the accident, nor to Farmers actual defense of its insured.

*Conclusions*

■ It becomes clear from our description of the respective policies that each company issued a policy to Platte Valley Paint & Glass Co., Inc. Farmers covered the Mercury automobile, and Fidelity covered certain automobiles owned by Platte Valley and hired automobiles, if any. In each case the Ford came under the insurance afforded. This was by reason of it being a substitute automobile as far as the Farmers policy is concerned, and by reason of it being a hired automobile insured on a cost of hire basis as far as the Fidelity policy is concerned.

Likewise, in each case the insurance afforded for the Ford was limited by the policy to excess insurance over any other

collectible insurance. Consequently, neither insurer can have the benefit of being liable for excess amounts only. Therefore, the general provision in each policy for proportionate payment of losses will apply. Cosmopolitan Mutual Insurance Company v. Continental Casualty Company, 28 N.J. 554, 147 A.2d 529, 533–534, 69 A.L.R.2d 1115; Continental Casualty Company v. Buckeye Union Casualty Company, Ohio Com.Pl., 143 N.E.2d 169, 180.

█ Where the excess insurance clauses of two policies are mutually repugnant, as we find them to be in the policies presently before us, the liability of the insurers must be prorated in proportion to the liability limits provided by the respective policies. This view is supported by the following authorities: Gilkey v. Andrew Weir Insurance Company, 9 Cir., 291 F.2d 132, 135–136; Oregon Auto. Ins. Co. v. United States Fidelity & Guaranty Co., 9 Cir., 195 F.2d 958, 960; Continental Casualty Company v. St. Paul Mercury Fire & Marine Insurance Company, D.C.Fla., 163 F.Supp. 325, 326; Insurance Company of Texas v. Employers Liability Assurance Corporation, D.C.Cal., 163 F.Supp. 143, 146; Hancock v. Western Casualty & Surety Company, D.C.Ky., 154 F.Supp. 164, 166; Continental Casualty Company v. New Amsterdam Casualty Company, 28 Ill.App.2d 489, 171 N.E.2d 406, 411; Cosmopolitan Mutual Insurance Company v. Continental Casualty Company, 28 N.J. 554, 147 A.2d 529, 533–534, 69 A.L.R.2d 1115; Reetz v. Werch, 8 Wis.2d 388, 98 N.W.2d 924, 927; Arditi v. Massachusetts Bonding & Insurance Company, Mo., 315 S.W.2d 736, 743. See also Employers Liability Assur. Corp. of London, England, v. Pacific Employers Ins. Co., 102 Cal.App.2d 188, 227 P.2d 53, 55 and 57, wherein it was held that, in such a situation, both insurers became concurrent insurers and were jointly liable.

For the reasons specified in these conclusions, the case should be reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BLUME, C. J., not participating.

Mr. Justice HARNSBERGER (dissenting).

As the result of an accident involving an automobile driven by Arnold, plaintiff's deceased, and a Ford automobile driven by Chapman, defendant's deceased, plaintiff was given judgment against defendant for $31,884.85. The Ford automobile driven by Chapman had been loaned to Chapman's employer, Platte Valley Paint & Glass Company, Inc., for Chapman's use, while a Mercury automobile, theretofore used by Chapman and also owned by Meyers Lease & Rental Company, and leased to Platte Valley Paint & Glass Company, Inc., was being repaired.

Upon execution, The Fidelity and Casualty Company of New York, United States Fidelity and Guaranty Company and Farmers Insurance Group (Farmers Insurance Exchange) were summoned as garnishees.

Both the Fidelity and Casualty Company and the United States Fidelity and Guaranty Company denied possessing any money or effects belonging to the defendant, but the Farmers Insurance Exchange answered admitting there was in effect its policy issued to Platte Valley Paint & Glass Company, Inc., covering a certain Mercury Station Wagon owned by Meyers Lease & Rental Company, and which was leased to Platte Valley Paint & Glass Company, Inc.; that the "policy afforded public liability coverage for each person injured under the terms of said policy in the amount of $100,-000.00 [which coverage appears as item A of 'Declarations' attached to the policy]' and covering property damage for any one accident under the terms of said policy up to the amount of $20,000.00 [which coverage appears as item B of 'Declarations' attached to the policy]"; stated the car driven by Chapman was loaned to "said Glen W. Chapman and/or Platte Valley Paint & Glass Company as a substitute vehicle pending the repairing of the subject initial vehicle"; and that the insurance contract contained a paragraph number 17, entitled

"Other Insurance—Coverages A, B, E, F, G and H", which the garnishee quoted as follows:

"A. (public liability) and B (property damage)

" * * * The Exchange shall not be liable for a greater proportion of any loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all collectible insurance against such loss.

"With respect to a substitute or non-owned automobile, coverages A, B, E, and F shall be excess insurance over any other collectible insurance of any kind available to the insured. * * *"

The answer of Farmers Insurance Exchange also stated it was advised there was in effect a policy of insurance covering the vehicle being driven by Chapman at the time of the accident, issued by the Fidelity and Casualty Company, and that there was also in effect a policy of insurance issued by United States Fidelity and Guaranty Company to Meyers Lease & Rental Company covering lease operations and leased vehicles of that company.

A hearing on the answers of the garnishees was had, at which plaintiff moved for an order determining the garnishees to be jointly and severally liable for the full amount of plaintiff's judgment and requiring the garnishees to jointly and severally pay the amount thereof into court.

Following a hearing upon that motion, the court made certain findings among which were: That the Ford accident vehicle driven by Chapman was a stand-by or replacement vehicle for a Mercury Commuter Station Wagon, owned by Meyers Lease & Rental Company, and the accident vehicle was leased to Platte Valley Paint & Glass Company, Inc., for use of Chapman as its salesman and agent while the Mercury was being repaired; that Chapman, as the permissive user of the accident vehicle, was covered by the Fidelity and Casualty Company's policy issued to Platte Valley Paint & Glass Company, Inc., *but that the*

*coverage under condition 14 was limited to excess over any other valid and collectible insurance;* that the Farmers Insurance Exchange policy was the primary coverage because it was written pursuant to the lease agreement between Meyers Lease & Rental Company and Platte Valley Paint & Glass Company, Inc., wherein the owner as part of the cost of hire agreed to furnish liability and property damage insurance with limits of $100,000 to $300,000; *that a condition of the Fidelity and Casualty Company's policy limited its insurance on hired automobiles insured on a cost of hire basis;* that the condition 14 so limiting Fidelity and Casualty Company's insurance operated from the inception of the rental agreement; that the substituted vehicle provision in the Farmers Insurance Exchange policy never became operative, as there was no other collectible insurance of any kind available to the insured under the Fidelity and Casualty Company policy except in excess of the $100,000 and $300,000 figure set forth for the primary coverage carried by the Farmers Insurance Exchange. The effect of those findings was that the Fidelity and Casualty Company's policy provided no other collectible insurance available for the satisfaction of the judgment, as that judgment did not exceed either the $100,000 or the $300,000 limitation. Similarly the court further found there was no liability of the United States Fidelity and Guaranty Company as its policy *also* failed to cover the involved vehicle.

Thereupon the court ordered Farmers Insurance Exchange to pay into court $31,-884.85, together with accrued interest at the rate of seven per cent per annum from the date of plaintiff's judgment, and discharged both the Fidelity and Casualty Company and the United States Fidelity and Guaranty Company from liability.

The Farmers Insurance Exchange has appealed from that order and from a further order denying a motion to amend the order. However, we understand the appellant does not contest the dismissal of the United States Fidelity and Guaranty Com-

pany, as appellant's brief says it "specifically raises the question of the release of Fidelity and Casualty Company from any liability in the premises and putting the sole responsibility for this loss upon Farmers Insurance Exchange."

The Farmers Insurance Exchange, on April 13, 1961, paid into court in partial satisfaction of the judgment and in tender to the plaintiff, $19,821.20, as two-thirds of the award for wrongful death of Arnold, plus interest thereon from May 17, 1960, the date of such judgment to the date of the payment amounting to $1,248.75, and $465.-15, as two-sevenths of the award for the property damage suffered by the automobile driven by Arnold, plus interest thereon for a like period, amounting to $29.85, and the full award of costs, amounting to $525.04, or a total tender of $22,089.95.

It is the contention of appellant that the untendered balance of the judgment for property damage and personal liability is properly chargeable to the Fidelity and Casualty Company under a proper interpretation of the policies issued by the Farmers Insurance Exchange and that issued by the Fidelity and Casualty Company.

The appellant agrees Chapman was a permissive user of the vehicle involved in the accident, under the policy of Farmers Insurance Exchange, and that the insured Mercury Station Wagon which was replaced by the Ford involved in the accident was not owned by, but was leased to, the deceased's employer by Meyers Lease & Rental Company.

The appellant quotes from the Farmers Insurance Exchange policy the following provisions as binding the Farmers Insurance Exchange under "Part I, Coverages A and B—Liability Insurance":

"(A) * * * To pay all damages which the insured becomes legally obliged to pay because of:

"(A) bodily injury to any person, and/or

"(B) damage to property, arising out of the ownership, maintenance or use of an automobile as hereinafter defined, * * *."

Appellant also indicates the pertinence of other provisions of the Farmers Insurance Exchange policy by quoting paragraph (2) of "Definition of 'Named Insured' and 'Insured' under Part I" and Condition 17:

"(2) the unqualified word 'insured' includes (a) the named insured and his relatives, and (b) with respect to the described automobile, or a newly acquired automobile, any other person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or with his permission, * * *."

"(17) Other Insurance—Coverages A, B, E, F, G and H

"Under Coverages A, B, E and F, the Exchange shall not be liable for a greater proportion of any loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all collectible insurance against such loss.

"With respect to a substitute or non-owned automobile, Coverages A, B, E and F shall be excess insurance over any other collectible insurance of any kind available to the insured. Under Coverage H, the insurance with respect to a substitute or non-owned automobile shall be excess insurance over any other collectible automobile medical payments insurance. Under Coverage G, the insurance shall be excess over any other collectible automobile medical payments insurance available to an insured under any other policy."

The Coverages A, B, E, F, G and H, referred to in the above excerpts from the Farmers Insurance Exchange policy, do not specify the amount or limit of the money coverage, but in the insured's application for membership and insurance to the Farmers Insurance Exchange, and in an instrument titled "Declarations," both of

which are attached to the policy, those amounts appear as follows:

"A—Bodily Injury Liability $100,000 each person  
$300,000 each occurrence  
B—Property Damage Liability $ 20,000 each occurrence  
G & H—Medical Payments $ 1,000 each person  
E—Comprehensive (including Fire & Theft) Actual Cash Value  
F—Collision or Upset Actual Cash Value  
Less $50 Deductible"

The only source from which the effective date of the Farmers Insurance Exchange policy may be determined is from the date of May 24, 1958, appearing in the application attached to and presumably made a part of the policy. Inasmuch as Endorsement 115–A, hereinafter set forth, bears the same date, it is concluded the endorsement was made coincident with the issuance of the policy.

Appellant also calls to attention the policy of insurance issued by the Fidelity and Casualty Company to Platte Valley Paint & Glass Company, Inc. This policy was issued as of December 1, 1958, and appellant attaches importance to the Fidelity and Casualty Company's agreement set forth under the heading "Insuring Agreements," Paragraph I, as follows:

*"Coverage A—Bodily Injury Liability*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

*"Coverage B—Property Damage Liability—Automobile*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile."

Appellant also says it is necessary to consider the following provisions of the Fidelity and Casualty Company's policy:

*"III Definition of Insured*

"The unqualified word 'insured' includes the named insured and also includes (1) * * * and (2) under coverages A and B, *any person* while using an owned automobile or *a hired automobile* and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured *or with his permission,* and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. * * *" (Emphasis of appellant.)

*"14. Other Insurance*

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Appellee points out appellant entirely overlooks Endorsement 115–A to the Farmers Insurance Exchange policy, termed by appellee as "a rider," the pertinent parts of which are as follows:

"OWNERSHIP VESTED IN OTHER THAN NAMED INSURED

"IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS POLICY SHALL APPLY TO THE NAMED INSURED AND SPOUSE TO THE SAME EXTENT

AS IF EITHER WERE THE OWNER OF THE DESCRIBED AUTOMOBILE, WHILE IT IS REGISTERED IN THE NAME OF MEYERS LEASE AND RENT COMPANY, SCOTTSBLUFF, NEBRASKA AND IS IN THE CUSTODY OF THE NAMED INSURED, OR IS BEING USED BY OTHERS WITH THE PERMISSION OF THE NAMED INSURED.

"IT IS FURTHER AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS POLICY FOR COVERAGES E AND F (COMPREHENSIVE CAR DAMAGE, AND COLLISION) SHALL APPLY ONLY TO SUCH LOSS FOR WHICH THE NAMED INSURED MAY BE HELD LEGALLY LIABLE AS CUSTODIAN OR BAILEE FOR HIRE OF THE DESCRIBED AUTOMOBILE SUBJECT TO THE DEDUCTIBLE SUM, IF ANY, STATED IN THE DECLARATIONS."

Our understanding of appellee's position respecting this rider, or endorsement, is that notwithstanding the vehicle involved in the accident was not owned by Platte Valley Paint & Glass Company, Inc., the coverage afforded the insured Chapman was the same as though the vehicle was owned by Chapman, inasmuch as it was being driven by the Paint & Glass Company's employee Chapman with that Company's permission. And appellee claims this endorsement overcomes and vitiates paragraph 17 of the Farmers Insurance Exchange policy which would otherwise seemingly limit Farmers Insurance Exchange's liability to excesses above other recoverable insurance. Appellee reasons that because the Chapman-driven automobile was a vehicle not owned by the insured Platte Valley Paint & Glass Company, Inc., under the facts and terms of the Farmers Insurance Exchange policy, the 115–A Endorsement, and not paragraph 17 of the Farmers Insurance Exchange policy, governs, and, therefore, the Farmers Insurance Exchange is primarily liable and the Fidelity and Casualty Company is liable only for excess amounts of which there are none.

Appellee also insists the Farmers Insurance Exchange is in some way estopped, or at least adversely bound, by a statement in a letter written by its counsel to the Fidelity and Casualty Company, advising the Farmers Insurance Exchange had undertaken the defense of its insured and saying that "primary liability is carried by Farmers Insurance Group on the vehicle involved in this accident." However, the letter also states it was not known "just what liability is involved insofar as your [Fidelity and Casualty Company's] assured is concerned." The appellant, in argument, explained that at the time the letter was written its author had not seen the Fidelity and Casualty Company policy. Under these circumstances, no importance is attached to appellant's statement in its letter relating to primary liability.

In furtherance of its position, appellant says that both policies provide excess insurance, and, therefore, the "excess" is carried pro rata to the exposure involved. This is said to accord with a general rule that where several policies insuring the same property contain pro rata clauses, each insuror is liable for its proportionate amount, citing and quoting from Celina Mutual Casualty Co. of Ohio v. Citizens Casualty Co. of New York, 194 Md. 236, 71 A.2d 20, 21 A.L.R.2d 605, and New Amsterdam Casualty Co. v. Hartford Accident & Indemnity Co., D.C.Ky, 18 F.Supp. 707, affirmed, C.C.A.Ky., 108 F.2d 653. We find nothing in the Celina case which supports appellant's position under the facts of this case. The most that is gleaned from that decision is that where each policy has a pro rata clause, the contract of each insuror is to pay its proportionate part of the loss suffered by its insured. However, neither the opinion, nor the facts involved in the cited case, deal with the situation with which we are confronted. Here, as will later be pointed out, there is a special pro-

vision in the contract of the Fidelity and Casualty Company which is applicable under the facts before us and which injects an additional element which must be given consideration.

The New Amsterdam case is even farther afield, because it was there held that the contesting insurance companies were not co-insurors and hence the appealing company was not entitled to apportionment. In fact the court said the appellant was liable for the entire amount of liability in dispute.

The appellee considers the New Amsterdam decision hinged upon its policies having been issued before the Hartford policy, saying in its brief:

" * * * The Court held that Condition A of the Hartford policy was rendered void, due to the fact that the New Amsterdam Casualty Company had issued its policies prior to the issuance of that of the Hartford Company. * * *"

Counsel misapprehends the court's holding. The opinion in the New Amsterdam case reported in 108 F.2d 656 noted there was no coverage under the Hartford policy because the involved vehicle was being operated by "one who had rented it from the named assured," and, therefore, the vehicle was expressly excluded from coverage by the policy's own provisions relating to coverage of others than the named insured. The decision did not turn upon the question of priority of time of effective coverage under the policies in question, but upon the exclusion of coverage under the terms of the Hartford policy. Thus the court merely held the vehicle was not covered by Hartford's insurance and consequently the New Amsterdam Casualty Company was solely liable for the loss in that case. In this respect, however, the New Amsterdam case is in parallel with the case we consider here, for in both instances there is an exclusionary provision which absolves from liability.

Employers Liability Assur. Corp. of London, England v. Pacific Emp. Ins. Co., 102 Cal.App.2d 188, 227 P.2d 53, cited by appellant, is valueless, as its facts are so different from those presented here, inasmuch as that case only concerned apportionment of excess liability where a third party had accepted primary liability.

Other cases cited by appellant or in the opinion are decisions where each of the policies of the insuring companies contains the same or substantially similar excess insurance clauses. However, they are unaffected by any such rider, endorsement, or condition as we must consider here. In consequence, the holdings in the cases cited that each of the insurors shall be liable in proportion to the amount of the limit of coverage under their respective policies because they contain the same or substantially similar excess insurance clauses are not helpful.

Appellant quotes paragraph "(17) Other Insurance—Coverages A, B, E, F, G and H," of Farmers Insurance Exchange policy, emphasizing the word "substitute" appearing in the first sentence of the second paragraph of that section. This indicates that appellant finds special significance in the fact that the Chapman-driven vehicle was substituted for the insured Mercury automobile while the latter was being repaired. Also, in oral argument, appellant's insistence that the automobile driven by Chapman was a substituted vehicle further stressed the importance appellant attached to that provision. But appellee properly points out that appellant overlooks the significance of the 115–A Endorsement of the Farmers Insurance Exchange policy. There is no question but that the accident car was substituted for or replaced the insured Mercury, but it was also a non-owned automobile and as such it was subject to the endorsement provision of 115–A which expressly afforded the same coverage to that non-owned car as if it had been owned by the named insured Platte Valley Paint & Glass Company, Inc. But Endorsement 115–A did not place any excess liability limitation upon it.

While it has been deemed proper to closely examine all provisions and endorsements of the policies of both insurance companies,

the decision in this case must be found solely from the provisions and endorsements of the Fidelity and Casualty Company's policy. No liability can be imposed upon the Fidelity and Casualty Company by virtue of any provision or endorsement of the Farmers Insurance Exchange policy. This appeal merely seeks contribution from the Fidelity and Casualty Company on the strength of provisions and endorsement in the contract between the Farmers Insurance Exchange and the insured—not by reason of a contract of insurance between the Fidelity and Casualty Company and the insured. Neither was there any contract of any kind whatsoever between the Farmers Insurance Exchange and the Fidelity and Casualty Company respecting the obligation of either to each other or to the insured. Under such circumstances it must be solely from the Fidelity and Casualty Company's own policy that its liability, if any, is to be found. Condition "14. Other Insurance" of the Fidelity and Casualty Company's policy expressly eliminates from the policy's coverage all but excess insurance for a loss arising out of the use of a hired automobile which is insured on a cost of hire basis. The involved Ford automobile was such a vehicle insured on a cost of hire basis and the lease rental agreement expressly stated that the lessor agreed to provide for its lessee "Public liability insurance with limits of $100,000 for each individual and $300,000 for each accident," thus making the covered vehicle a hired automobile insured on a cost of hire basis. This is undisputed. The involved automobile being thus expressly excluded by Condition 14 from coverage under the Fidelity and Casualty Company's policy, it cannot properly be made liable for payment of any part of the judgment in Chapman's favor.

The decision in this case, imposing a liability not provided by the contract between the parties, is most disturbing, as it further portends a departure from previous judicial practice of scrupulously avoiding infringement upon rights and prerogatives. In the Fair Trade cases, Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne, Wyo., 371 P.2d 409, lately decided by this court, the legislative attempt to impose contractual obligations upon persons not parties to a contract was by a unanimous court declared to be unconstitutional. Yet in Wambeke v. Hopkin, Wyo., 372 P.2d 470, decided a short time later, a majority of this court saw fit to write into a legislative statute an exception not present in the legislative act. Now, by decision of two members of this court, there is being written into the contract of private parties, i. e., Platte Valley Paint & Glass Company, Inc., and Fidelity and Casualty Company, an obligation on the part of one of the contractees for which even the other party to the contract does not contend. The reasoning relied upon to accomplish that result, although subtly expressed, is neither persuasive nor sufficiently impressive to warrant overriding adherence to old legal principles.

The findings of the learned trial court were sound and justified and should be upheld. Therefore, this dissent.