The AETNA CASUALTY AND SURETY COMPANY, a corporation, Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation, Defendant.

Civ. No. 4740.

United States District Court
D. Wyoming.

Dec. 21, 1964.

Bard Ferrall, of Ferrall, Bloomfield & Lynch, Cheyenne, Wyo., for plaintiff.

G. L. Spence, Riverton, Wyo., for defendant.

KERR, Judge.

This action is between two insurance companies which wrote automobile liability insurance policies covering the same automobile. Aetna Casualty and Surety Company, hereinafter referred to as Aetna, seeks a declaratory judgment to determine the respective rights and liabilities of the parties. It claims that St. Paul Fire and Marine Insurance Company, referred to herein as St. Paul, is obligated to contribute its proportionate share of the loss incurred on account of the insured. The requisite diversity of citizenship and jurisdictional amount are present.

The material facts are not in dispute. Robert John Bowden, Vice-President and Cashier of the First Security Bank of Rock Springs, Wyoming, was involved in an automobile accident on August 12, 1961, while vacationing in Massachusetts and while driving a bank-owned automobile. The bank had given Mr. Bowden permission to use the automobile regularly for his personal affairs, as well as for business purposes. As a result of that accident judgments were entered against Mr. Bowden on April 30, 1963, in the total amount of $110,000.00, plus interest and costs. St. Paul refused to participate in the actions against Bowden in the United States District Court for the District of Massachusetts, or to contribute any payments on the judgments. Aetna, therefore, was required to defend the suit and is obligated to pay the judgments entered against Bowden. To prevent garnishment proceedings against the

bank, Aetna paid all attorneys' fees and expenses incurred in the defense of the Massachusetts actions and three-fourths of the judgments entered therein. It asks that this court declare that St. Paul is obligated to pay its pro rata share, or one-fourth, of said fees, expenses and judgments.

At the time of the accident two liability policies were in effect covering the bank-owned automobile; the one issued by Aetna on January 1, 1961, insuring the bank and any driver of the car while on bank business or using it with the permission of the bank, and the other issued by St. Paul on July 12, 1961, in which Mr. Bowden was the named insured. Mr. Bowden was indisputably covered by the Aetna policy, the coverage limits of which were $300,000.00 for each person. Since Mr. Bowden and his family regularly used the automobile as his family car, Mr. Bowden procured the St. Paul policy to insure himself and his wife and any other person using the car with his permission. That policy had a coverage limit of $100,000.00 for each person. The "other insurance" provisions are identical in both policies and provide that if the insured has other insurance against a loss covered by the policy the Company shall not be liable under the policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss. The "excess insurance" proviso in the Aetna policy applies to loss arising out of the maintenance or use of any hired or non-owned automobile. Likewise, the "excess insurance" proviso in the St. Paul policy applies to a temporary substitute or a non-owned automobile. The parties agree that the automobile here in issue was not a hired or temporary substitute or non-owned automobile under the terms and conditions of their respective policies. The excess provisions of the policies, therefore, are not applicable to the automobile driven by Mr. Bowden at the time of the accident.

Because the bank owned the automobile but permitted Mr. Bowden to use it regularly for his personal and business purposes, the automobile was neither an owned nor a non-owned automobile as defined in the St. Paul policy. Except for the admissions and concessions made on behalf of St. Paul, its policy issued to Mr. Bowden and for which he paid premiums would not have given him any protection. St. Paul waives this technical and unrealistic defect and states that there is no issue over whether its policy afforded Mr. Bowden some sort of insurance protection. Admitting that the St. Paul policy covers Mr. Bowden, St. Paul avers that the coverage is of the type that was intended by the parties. The only issue to be decided, therefore, is what kind of coverage did St. Paul and Mr. Bowden intend to accomplish by the insurance policy.

■ The Court cannot increase the liability of the insurance companies as expressed in their policies nor can it assume that the companies intended to provide coverage not expressed in the policy. Farmers Insurance Exchange v. Fidelity & Casualty Company of New York et al., 374 P.2d 754, Wyo., 1962. St. Paul, however, admits to coverage and asks this Court to determine whether it is primary or excess coverage.

■ St. Paul treated Mr. Bowden as the virtual owner of the automobile by its admissions of liability absent any other insurance, and by its issuance of a family automobile policy knowing that the bank had legal title to the car. It is not necessary, therefore, for me to decide whether legal title is a condition precedent to an insurable interest. Neither is it necessary for me to hold that an insurable interest is not required because I am satisfied that at the time of the accident Mr. Bowden had an insurable interest in the automobile. See United Services Automobile Association v. Howe, et al., D.C.Minn., 208 F.Supp. 683 (1962).

The record does not support defendant's position that Mr. Bowden wanted

excess insurance over the amount provided by the Aetna policy. There is no evidence that Mr. Bowden was concerned about the amount or limit of coverage he had. There is, on the other hand, ample evidence that Mr. Bowden was concerned about who was covered by the Aetna policy and under what circumstances. The evidence is undisputed that Mr. Bowden had some doubt whether his wife and family would be covered under the bank's insurance should one of them be driving the car. He wanted to be sure that he was covered so that he "would not be involving the bank in a suit or a lot of trouble" should a member of his family be driving and be involved in an accident. He said that he was purchasing the insurance "for the protection of his family". He wanted to be sure he was fully covered to "try to keep the bank out of the liability in case it was one of the family driving beside myself". He had a dual purpose for getting this St. Paul insurance: to protect his family and to exonerate the bank. Counsel for the defendant elicited the admission from Mr. Bowden that he did not intend to duplicate the bank's insurance or to benefit Aetna but this testimony does not point to his wish to procure excess insurance. At defense counsel's insistence Mr. Bowden reiterated that he would not have purchased more insurance had he been absolutely certain that the Aetna insurance covered him and his wife under all circumstances.

The parties agree therefore that the protection for his family was Mr. Bowden's purpose in getting the St. Paul insurance at his own expense. Their differences arise in the deductions from this fact. The plaintiff concludes that Mr. Bowden wanted and received omnibus coverage to protect himself and his wife if she were driving the car. The defendant deduces that Mr. Bowden wanted and received excess insurance.

██ The evidence does not support defendant's deduction that all Mr. Bowden wanted was excess insurance. The insurance agent with whom Mr. Bowden consulted was also a director of the bank.

He knew that the bank had title to the car. He knew that the bank permitted Mr. and Mrs. Bowden to use the car for personal purposes. He knew that for all intents and purposes the car belonged to Mr. Bowden. Though St. Paul's agent did not know the extent of Aetna's coverage, he knew of Mr. Bowden's fear that it did not cover his wife. He attempted to provide, therefore, insurance that would cover Mrs. Bowden while driving the automobile. He recommended the policy which was issued by St. Paul in July 1961 because it was the broadest policy he could think of. If the bank's insurance did not protect Mrs. Bowden then it would be futile for Mr. Bowden to buy excess insurance only. It is clear beyond cavil, therefore, that both St. Paul and Mr. Bowden intended that the insurance should cover Mr. and Mrs. Bowden and any member of the Bowden family driving the car and that it should not be merely excess insurance.

My finding that the St. Paul insurance policy constituted a primary insurance coverage is dictated not only by the facts but it is inferentially conceded by the defendant. St. Paul is not attempting to avoid its obligations; it states in its brief that "had there been a failure in the Aetna policy, had there been some kind of breach by Bowden of his duty to Aetna, had there been some circumstances which was not covered by the Aetna policy while Bowden was on his trip, St. Paul's insurance would have been available". Each party therefore admits that in the absence of the other's policy it would be liable for the damages adjudged against Mr. Bowden. The only rational solution then is that the two insurers are liable in proportion to the amount of insurance provided by their respective policies.

The conclusion is compelling that the general provision in each policy for proportionate payment of losses will apply. Both Aetna and St. Paul are liable to prorate in proportion to the amount of insurance provided by their respective policies and the proration is to be applied in respect both of damages and of the

expense of defending the suits against the insured. Farmers Insurance Exchange v. Fidelity and Casualty Company of New York, et al., 374 P.2d 754, Wyo.1962; Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., et al., 9 Cir., 195 F.2d 958 (1952).

Reformation of the St. Paul insurance policy is not necessary in view of my finding that St. Paul insured Mr. Bowden as the owner of the automobile. To reform the policy to limit coverage to excess insurance would be in derogation of the intention of the parties to that insurance contract.

I find, therefore, that the plaintiff proved by a preponderance of the evidence that it was entitled to judgment declaring that each insurer, that is, both the plaintiff and defendant, is obligated to contribute its proportionate share of the loss incurred by the judgments entered against the insured. I further find that the defendant, St. Paul Fire and Marine Insurance Company, should take nothing by its counterclaim.

This opinion sufficiently states the findings of fact and conclusions of law of the Court. Further findings of fact and conclusions of law are not necessary. Appropriate Judgment in conformity with this opinion will be entered.