The GREAT ATLANTIC AND PACIFIC TEA COMPANY, a corporation, for the use of the Travelers Indemnity Company, a corporation, Plaintiff,

v.

PEPSI–COLA BOTTLING COMPANY OF VINCENNES, INDIANA, INCORPORATED, a corporation, and Underwriters at Lloyd's of London, Signatory to Policy No. 3283, not incorporated, Defendants.

Civ. A. No. 4538.

United States District Court
E. D. Illinois.

Oct. 11, 1962.

Oehmke, Dunham & Boman, East St. Louis, Ill., for plaintiff.

Wagner, Conner, Ferguson, Bertrand & Baker, East St. Louis, Ill., for defendants.

WILLIAM G. JUERGENS, District Judge.

This removed cause is before the court on the complaint of The Great Atlantic and Pacific Tea Company, a corporation (hereinafter referred to as "A & P"), for the use of The Travelers Indemnity Company, a corporation (hereinafter referred to as "Travelers"), and is against Pepsi-Cola Bottling Company of Vincennes, Indiana, Incorporated, a corporation (hereinafter referred to as "Pepsi-Cola"), and Underwriters at Lloyd's of London, Signatory to Policy No. 3283, not incorporated (hereinafter referred to as "Lloyd's").

Jurisdiction in this cause is founded on diversity. A & P is a corporation organized and existing under and by virtue of the laws of a state other than the State of Illinois or the State of Indiana and does not have its principal place of business in the State of Illinois. Pepsi-Cola is a corporation organized and existing under the laws of the State of Indiana and does not have its principal place of business in the State of Illinois. Lloyd's is an association of insurance underwriters, being citizens of the United Kingdom, not citizens of the United States, and does not have a principal place of business in the State of Illinois. The amount in controversy fairly exceeds the sum of $10,000.00, exclusive of interest and costs.

Plaintiff A & P and defendant Pepsi-Cola were defendants in a suit filed by one Marjorie L. Barbour on March 29, 1955 in the United States District Court for the Eastern District of Illinois in Cause 3155 (herein sometimes referred to as the "original suit"). In that action plaintiff alleged she received injuries as the result of the negligence of A & P and Pepsi-Cola in bottling, packing, handling and distributing cartons and bottles of Pepsi-Cola and that as a result of that negligence a bottle of Pepsi-Cola, distributed by Pepsi-Cola and sold in an A & P store, broke, which was the proximate cause of the injury.

From the deposition of Ralph H. Freels, manager of the A & P store in Mount Carmel, Illinois, the place of the injury, it appears that Mr. Freels, although present, did not actually see the accident but that he heard the noise which he described as "Well, it sounded like a liquid compressed when it breaks. It makes this kind of like a combustion sound."; that he looked up and saw Mrs. Barbour standing alongside a checkout counter, holding her hand to her eye; that he went over to the counter and found a six-pack Pepsi-Cola carton lying on the floor with at least one or two broken bottles in a pool of Pepsi-Cola liquid; that he noticed Mrs. Barbour's eye had been pierced by a piece of flying glass and that a fluid was flowing out of the eye; that he then took Mrs. Barbour to the doctor and afterward returned to the store; that upon his return the Pepsi-Cola carton and the broken bottles had been cleaned up; that the carton was soaked wet and soggy, apparently from the fluid in which it had lain in the floor after the accident; that one of the bottles had been removed to his office for keeping for future reference; that this bottle was not full; that part of the fluid had leaked from the bottle; that the carton had the bottom or side torn out of it; that Pepsi-Cola was delivered to the A & P store in question in six-pack cartons in wooden half shells, which were placed in the back room of the A & P store by a Pepsi-Cola distributor, namely, the Tenbarge Distributing Company; that the deliveries were paid for by making payment to one Burns; that the Pepsi-Cola was bottled by the Pepsi-Cola Bottling Company of Vincennes, Indiana; that after the Pepsi-Cola was deposited in the storage room, employees of A & P then removed it to the shelves for sale in the cartons.

The accident from which Mrs. Barbour received her injuries arose out of

the handling of a Pepsi-Cola product in a store owned and operated by A & P.

At the original trial the jury returned a verdict in favor of plaintiff Marjorie L. Barbour and against defendants A & P and Pepsi-Cola in the amount of $30,-000.00.

Subsequently, Richard E. Barbour filed suit against defendants A & P and Pepsi-Cola, which suit was settled for $2,500.00 plus cost of suit.

The evidence further shows that pursuant to stipulation A & P and Pepsi-Cola each paid in settlement one-half of the amounts to the Barbours as follows:

In the case of Marjorie L. Barbour:

| | |
|---|---|
| One-half the amount of judgment plus interest | $15,108.26 |
| One-half the court costs | 207.40 |

In the case of Richard E. Barbour:

| | |
|---|---|
| One-half the amount of settlement | $ 1,250.00 |
| One-half the court costs | 38.80 |
| For a total expenditure by each of | $16,604.46 |

In Count I the plaintiff seeks to recover from the defendants the amount that was paid on the judgment, the settlement, the court costs and its attorney fees expended in defending the original suit and expenses.

By Count II it seeks to recover five-eighths of the sum which it expended as shown in Count I in the event that it is found not to be entitled to recover under Count I and bases its claim on a policy of insurance issued by Lloyd's.

The jury in the case of Marjorie L. Barbour against A & P and Pepsi-Cola by its verdict found in favor of the plaintiff and against the defendants jointly. Both of the defendants were found guilty of negligence as alleged in the complaint. No special interrogatories were submitted to the jury.

By its verdict the jury necessarily found that A & P and Pepsi-Cola were joint tort-feasors, and as such neither is entitled to recover from the other in the absence of special circumstances which do not here exist. (The fact that there may have been a policy of insurance extending from Lloyd's to A & P for product liability does not enlarge any rights that A & P might have against Pepsi-Cola.) Accordingly, the court finds that judgment must be entered in favor of defendant Pepsi-Cola as to both Count I and Count II; and since recovery under Count I would likewise be based on a recovery among joint tort-feasors, judgment must be entered in favor of Lloyd's as to Count I; Count II as pertains to Lloyd's, however, rests on a different foundation, namely, the existence of a policy of insurance issued by Lloyd's.

On the date of the occurrence out of which this action arises, there was in force and effect an insurance policy written by Lloyd's, naming Pepsi-Cola among other insured, by which it agreed:

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, * * * because of bodily injury, * * * at any time resulting therefrom * * * sustained by any person or persons, caused by accident and arising out of

"(1) the handling or use of or the existence of any condition in goods or products (and their containers) manufactured, sold, handled, or distributed by the Insured, if the accident occurs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured, * * *."

This policy also contained the following:

"VENDORS ENDORSEMENT (BROAD FORM)

"In consideration of the rate charged hereunder it is understood and agreed that coverage hereunder is extended to include Vendors, covering the complete liability of such Vendor with respect to merchandise

manufactured or distributed by the named assured in which the Vendors have an insurable Interest, provided that Vendors do not:

"(a) Change the form of such merchandise or

"(b) Repack such merchandise or

"(c) Perform any demonstration, installation, servicing or repair operations in connection with such merchandise away from the Vendor's premises."

There is a complete lack of evidence which would establish that provisos (a) and (c) could in any manner deprive A & P of coverage. There was some evidence in the Freels deposition which might be contended, if one's imagination were stretched to the utmost, showed that the merchandise might possibly have been repacked. This evidence consisted of a statement by Mr. Freels that customers of A & P would on occasion transfer bottles from one carton to another or would mix bottles of one beverage in cartons belonging to other beverage producers. There was no showing, however, that the carton involved had been repacked. The evidence showed that the carton involved was a Pepsi-Cola carton; that the bottles involved were Pepsi-Cola bottles.

■ The court finds that the evidence was sufficient to establish liability coverage under the vendors endorsement.

At the time of the occurrence there was also an insurance policy issued by Travelers, which insured, protected and indemnified A & P for any loss incurred by reason of injury to parties, sustained in and brought by patrons of any stores operated by A & P.

Both Lloyd's certificate and Travelers' policy contained a provision substantially identical concerning other insurance. Lloyd's is as follows:

"If the Insured has other insurance against a loss covered by this Certificate the Underwriters shall not be liable under this Certificate for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The coverage here provided by Lloyd's is $100,000.00 and by Travelers $60,000.00. Thus, if the other insurance provision is controlling, then Lloyd's would be liable for five-eighths of A & P's loss and Travelers for three-eighths of the loss.

The court has been unable to find any case directly in point and none has been cited by either party. The court has reviewed, however, cases which characterize and discuss policies involving "escape," "pro rata" and "excess coverage" provisions.

The Appellate Court of Illinois for the First District in Continental Casualty Company v. New Amsterdam Casualty Company, 28 Ill.App.2d 489, 171 N.E.2d 406, held that where each of two policies contained an excess coverage provision, such provisions in both policies were mutually repugnant and should be disregarded.

In Continental Casualty Company v. Buckeye Union Casualty Company, 143 N.E.2d 169, the Court of Common Pleas of Ohio had for consideration two excess coverage clauses. The court in discussing generally other insurance clauses had the following to say:

"* * * These seem to fall into three general types: (a) a provision to the effect that in the event of other insurance, the loss shall be borne pro-rata dependent upon the monetary limits of coverage, which will hereafter be referred to as the pro-rata clause; (b) a provision that the policy shall be excess over any other valid and collectible insurance applicable to the liability, hereafter referred to as the excess clause, and (c) a provision that if there is other valid and collectible insurance the policy shall not apply, hereafter referred to as the escape clause. Thus it is apparent that

cases of 'double insurance' have and will continue to arise involving prorata vs. excess, pro-rata vs. escape, excess vs. escape, excess vs. excess and escape vs. escape. Of course, no real problem would arise in prorata v. pro-rata."

While the last sentence quoted above would appear to be dicta in the case, yet this court believes that it contains sound reasoning and finds that as the Ohio court stated no real dispute would ordinarily arise since the two insurers agree that in the event other coverage is provided they will share the loss in accordance with the amount of their coverage.

A somewhat more complicated situation is presented here than is generally presented in the other insurance cases. Here two parties, A & P and Pepsi-Cola, have been found jointly liable by a jury. By stipulation of the parties, each has paid one-half of the liability. Each, together with its liability insurer, in its stipulation reserved the right to assert claims against the other when such payment was made. Since we have two joint tort-feasors and since Illinois law is quite clear that there can be no contribution between tort-feasors, the problem would appear to be a bit more difficult than the situation where you have one tort-feasor covered by two insurance companies.

Lloyd's argues that if the coverage provided by its policy is found to include A & P, as well as Pepsi-Cola, then they are liable for five-eighths of the entire amount paid by both parties and that Travelers is liable for three-eighths of the entire amount. It is argued that to hold otherwise would in effect be indirectly providing contribution between tort-feasors. The court does not believe that this necessarily follows since it could likewise be argued that if the court were to hold A & P and Pepsi-Cola each liable for one-half and then to apportion the coverage of A & P between the two insurers, it might be argued that this is in effect apportioning liability between joint tort-feasors. The court does

not believe that to apportion one-half of the liability against one tort-feasor and one-half against the other is any more requiring contribution between tort-feasors than to hold that one of the tort-feasors is liable for the entire amount. If it were to follow Lloyd's theory, this court would in effect be requiring A & P to pay all of the judgment.

During the trial of the original cause, Lloyd's provided defense for Pepsi-Cola and Travelers provided the defense for A & P. After the trial Lloyd's paid one-half of the amount of the liability on behalf of Pepsi-Cola; Travelers paid one-half of the amount on behalf of A & P. Thus, it would appear that at this point Lloyd's has furnished a defense and shielded from liability only Pepsi-Cola; it has not in any manner provided any defense or provided any insurance for A & P as it is required to do under the terms of its policy.

■ The court finds that Lloyd's and Travelers are liable to A & P under the terms of the respective policies and that each must now share its portion of the liability attributable to A & P, which the court finds under the facts, as they have unfolded, should be one-half of the amount of judgment and costs of suit, namely, $16,604.46.

■ Travelers also argues that it is entitled to reimbursement for three-fifths of the amount of attorney fees and costs of preparation of trial. This does not necessarily follow. Travelers was required to defend the liability against its insured, and there has been no showing that it has incurred any greater costs in defending its insured than it would have had Lloyd's assisted with the defense. It is not entitled to recover attorney fees.

Accordingly, the court finds that judgment should be entered in favor of The Great Atlantic and Pacific Tea Company for the use of The Travelers Indemnity Company, a corporation, and against Underwriters at Lloyd's of London, Signatory to Policy No. 3283, not incorporated, in the amount of five-eighths of the

loss suffered by Travelers in paying the judgment and settlement agreement, together with court costs and interest thereon, for the total sum of $10,377.79 together with costs of this suit.