**CONTINENTAL CASUALTY COMPANY, Plaintiff, v. BUCKEYE UNION CASUALTY COMPANY et, Defendants.**

Common Pleas Court, Franklin County.

No. 193882.   Decided January 10, 1957.

Collis Gundy Lane, Richard Huggard, for plaintiff.

Wright, Harlor, Purpus, Morris & Arnold, for defendant, The Buckeye Union Casualty Co.

80

Watson, Davis & Joseph, Carl G. Nappi, for defendants, William K. and Thelma Kirby.

Ballard, Dresbach, Crabbe & Newlon, Lloyd E. Bilger, for defendant, Nationwide Mutual Insurance Company.

## OPINION

By LEACH, J.

This is an action for a declaratory judgment involving basically the question of the respective obligations of two insurance companies under liability policies. Specifically, the questions involved are (1) whether defendant, The Buckeye Union Casualty Company, is obligated to assume any liability in respect to suits and claims for alleged personal injury and property damage sustained in a motor vehicle accident involving defendant, Harry H. Davis, and (2) if so, the nature and extent of the respective liabilities of plaintiff, Continental Casualty Company, and defendant, Buckeye.

This matter was submitted to the Court on an agreed statement of facts between the plaintiff and defendants, Buckeye, William H. Kirby, Thelma Kirby and Nationwide Mutual Insurance Company, and upon the separate consents of defendants, Davis and The U-Drive It Company, Inc. by which these defendants consent to such a declaration. It appears, therefore, that all parties having any possible interest in the controversy are properly before the Court and that this is an action properly falling within the scope of the Declaratory Judgment Act of Ohio.

On July 30, 1955, Davis, who was then the owner of a 1954 Dodge automobile and to whom Buckeye had issued a policy including a "Use of Other Automobiles" provision, rented from U-Drive It a 1950 Chevrolet Stake Body Truck. Buckeye's policy was issued on June 22, 1955, for the period ending June 22, 1956. Continental had issued to U-Drive It a policy in which the corporation was the name of insured covering all motor vehicles of U-Drive It, with certain specified limits, and in addition, protection was accorded to renters of automobiles from U-Drive It with different limits. Continental's policy was issued on April 1, 1954, for the period including April 1, 1957. While engaged in moving his furniture from one house to another in Columbus, Ohio, and while driving the Chevrolet truck, Davis was involved in an accident with an automobile owned and operated by William H. Kirby and also occupied by his wife, Thelma Kirby. Defendant Nationwide Insurance Company had issued Mr. Kirby a $100.00 deductible collision policy on his automobile, and pursuant thereto paid to Mr. Kirby the sum of $409.89 and became subrogated to his claim against Davis to this extent. As a result of this collision, Mr. and Mrs. Kirby are asserting claims for personal injury in excess of $20,500.00 and Nationwide and Mr. Kirby are asserting claims for property damage in the aggregate sum of $509.89.

This case presents two separate and distinct questions. The first

question is whether the use by Davis of the Chevrolet truck was the use of "any other automobile" within the purview of the "Use of Other Automobiles" provision of his policy with Buckeye. Specifically the question is whether or not a truck is an "automobile" within the intendment of such provision. If it is not, it is clear that Buckeye has no obligation in this matter and that Continental alone is obligated to defend Davis and to pay, if payment is required, within its policy limits. If the truck is an "automobile," the second question is presented as to the respective obligations and liability of Continental and Buckeye since each policy, insofar as the particular accident is concerned, provided that its insurance "shall be excess insurance over any other valid and collectible insurance." We will discuss these questions in that order.

## I

Section V of the policy issued by Buckeye to Davis provides in part:

"**Use of Other Automobile** If the named insured (Davis) * * * owns a **private passenger automobile** covered by this policy (he did), such insurance as is afforded by this policy under coverages A (bodily injury liability), B (property damage liability), * * * With respect to said automobile applies with respect to **any other automobile**, subject to the following provisions:

    \*        \*        \*        \*        \*

"(d) This insuring agreement does not apply: * * * (3) under coverages A, B * * *, to any automobile while used in a business or occupation of such named insured * * * except a **private passenger automobile** operated or occupied by such named insured * * *." (Emphasis and parenthetical material added.)

It is the contention of Buckeye that "automobile" is defined by Section IV of the policy which provides:

"IV. **Automobile Defined** * * *.

"(a) **Automobile.** Except * * * where stated to the contrary, the word 'automobile' means:

"(1) **Described Automobile**—the motor vehicle or trailer described in this policy or, if none is so described, with respect to coverages A, B * * * any private passenger automobile owned on the effective date of this policy by the named insured * * *;

"(2) **Trailer**—under coverages A, B * * * a trailer not described in this policy, if designed for use with a private passenger automobile, if not being used for business purposes with another type of automobile * * *;

"(3) **Temporary Substitute Automobile**—Under coverages A, B * * *, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

"(4) **Newly Acquired Automobile**—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household * * *."

Buckeye asserts that whatever may be the meaning of the word "automobile" when contained in a policy which does not contain a

definition of that term, here we do have such a definition, and that such definition excludes a truck. But does the definition exclude a truck? We do not so conclude. A truck obviously is a "motor vehicle" (Par. [a] [1]). If it is otherwise an "automobile," why should it not fall within the scope of the word "automobile" as used in Par. (1) (4)? Actually, we believe it clear that none of the above definitions even purport to define what is meant by "any other automobile," as used in Section V. Instead they describe what we might call the automobile which is basically or primarily covered by the policy. Literally speaking, if the word "automobile" as used in the phrase "any other automobile" in Section V were limited to the four above quoted definitions of "automobile," the "Use of Other Automobile" provision of the policy would be completely nullified. This becomes clear if we assume that Davis, instead of renting the Chevrolet truck, had rented an ordinary passenger automobile, such obviously would be an "automobile" as the word is universally understood and used. It should be equally obvious, however, that it would not be the motor vehicle "described in this policy," would not be "any private passenger automobile **owned** * * * by the named insured," would not be a trailer, would not be a "substitute for the described automobile when withdrawn from normal use because of its breakdown," and would not be "an automobile, **ownership** of which is acquired by the named insured." In short, it is obvious that under no circumstances could any type of "other automobile," as referred to in Section V be an "automobile" as defined by Section IV.

Under such circumstances we must either forfeit entirely the "Use of Other Automobile" provision or conclude that the use of the word "automobile" therein must be given its "ordinary and commonly accepted meaning." **Babier v. National Casualty Co., 143 Oh St 215.** Construing the policy most favorably to the insured, **Mumaw v. Western and Southern Life Insurance Co., 97 Oh St 1,** we conclude that the Chevrolet truck in question is an "automobile" within the meaning of "any other automobile" as contained in Section V.

Especially when we apply the rule of construction which is followed universally and announced in the **Mumaw** case, we are in full agreement with the court in the case of Life and Casualty Ins. Co. v. Cantrell, 57 S. W. (2nd) 792, which concluded that "automobile" as used in a policy of insurance indicates "a motor driven, fast moving vehicle mounted on four wheels, and is an automobile whether called a runabout, a coupe, a coach, a sedan, a town car, a speed wagon, a delivery wagon, or a truck. The term 'automobile,' a generic term, embraces them all, including the truck—a fast moving, motor driven vehicle mounted on four wheels."

See also Life and Casualty Co. of Tenn. v. Metcalf, 42 S. W. (2nd) 909 and Life and Casualty Co. of Tenn. v. Roland, 165 S. E. 293.

Buckeye cites as authority for a contrary holding, the case of Neighbors v. Life and Casualty Co. of Tenn., 31 S. W. (2nd) 418. This case merely held that a motorcycle, a two wheeled vehicle, was not an "automobile" within the purview of an insurance policy, and has no applicability to the question of whether a truck is such an "automobile."

We perhaps should also direct attention to the fact that under the provisions of Section V, as quoted above, we find two references to "private motor vehicle." If Buckeye intended to limit its "other automobile" coverage to "any other private passenger automobile," the policy should have so stated in simple and unambiguous words. For example, it will be noted that these exact words were used in one of the policies under consideration in **Travelers Indemnity Co. v. State Automobile Ins. Co., 67 Oh Ap 457, 459.** Furthermore, were we to conclude, as in effect urged by Buckeye, that "any other automobile" actually means "any other private passenger automobile," there would be no need for the language of par. (d) of Section V. Here we find a limitation of the "any other automobile" provision to exclude "any automobile while used in a business or occupation of such named insured * * * except a private passenger automobile." This language necessarily means that coverage is provided for automobiles other than private passenger automobiles so long as not used in a business or occupation. Here Davis was using the truck not in his occupation or business but for the purpose of moving certain furniture.

For the reasons stated, we conclude that the policy issued by Buckeye to Davis did extend coverage to Davis while he was operating the truck, rented from U-Drive It on July 30, 1955.

**II**

Having concluded in Part I herein that the policy of Buckeye extends coverage to Davis for the accident in question, we turn now to the consideration of the extent of such coverage. It is conceded that the policy of Continental also extends coverage to Davis for the same accident. Each policy provides as to the situation under consideration identical limits of coverage, $5000.00 for each person and $10,000.00 for each accident for bodily injury and $5000.00 for each accident for property damage. As to bodily injury, the claims of Mr. and Mrs. Kirby exceed such individual limits and in fact exceed the collective limits, being in excess of $20,500.00. As to property damage, the claims of Mr. Kirby and Nationwide aggregating $509.89, are well within either policy limit.

There is no dispute as to the fact that we have here a situation which, but for the policy of Buckeye, Continental would provide the only coverage and be charged with the sole duty of defending Davis. Having concluded, as we have, that the policy of Buckeye extends coverage to Davis for the accident in question, it is equally fundamental that but for the policy of Continental, Buckeye would provide the only coverage and be charged with the sole duty of defending Davis.

The complications and the dispute between Continental and Buckeye arise from the fact that each policy, insofar as coverage of the particular accident is concerned, provides that its insurance "shall be excess insurance over any other valid and collectible insurance."

It is the contention of Buckeye that under the facts in this case, the insurance of Continental is the "primary" insurance and that its insurance is "excess." While it would appear that Continental might be in a position to make the same claim, it does not. Instead, it asserts that

under such facts, the "excess" clauses in effect cancel each other out, leaving each with the duty of primary liability to be shared pro-rata, in this case on an equal basis since the policy limits are the same.

The first contention of Buckeye in this respect is that the "Other Insurance" provision of Continental's policy, which contains the "excess" clause, cannot be availed of by Continental in the case at bar. This is urged on the basis that at the time Davis rented the truck, U-Drive It made no inquiry from him as to any other insurance he carried that might apply to the truck; that the lease agreement between Davis and U-Drive It made reference to insurance on the truck and referred to the "renter" as being one of the assured thereunder; that such agreement provided that the "renter" agreed to "comply with the terms and conditions of said policy, which by reference thereto are incorporated herein and made a part hereof;" and that no where in the lease agreement is any mention made of the "Other Insurance" provision.

We do not agree with this contention. We think it basic that the obligations of Continental must stand or fall on the basis of the terms of the policy itself. So far as Davis is concerned, it is a third party beneficiary contract entered into between Continental and U-Drive It. The mere fact that U-Drive It was a party thereto and was the named insured, does not and could not authorize it unilaterally to in any way modify the terms of the written contract, either for the benefit or to the detriment of the third party beneficiary. Having no such authority, its conduct insofar as its relationship to Davis is concerned, with the exception of the admitted fact that it did rent the truck to Davis, is of no concern in the disposition of this case.

We return, therefore, to the dilemma created by the existence of "excess" clauses in each of the insurance policies. It is fundamental that there cannot be "excess" insurance where there would be no "primary" insurance. Thus it is clear that both insurers cannot be "excess" insurers.

What therefore is the solution? Actually there are only four possible answers. (1) To conclude that within the limits of the stated liability of the policies (they being the same), there is no coverage at all and that there should be a pro-ration of all established liability of Davis only to the extent such liability exceeds such stated limits. Such a conclusion would in effect work a forfeiture and obviously must be rejected. Neither Continental nor Buckeye urge such a result and it is clear from an examination of the many authorities that such a conclusion would be completely unwarranted. (2) To conclude that the insurance of Buckeye is "primary" and that of Continental "excess" This Continental itself does not urge. (3) To conclude that the insurance of Continental is "primary" and the insurance of Buckeye is "excess." This is the result urged by Buckeye. (4) To conclude that the two "excess" provisions in effect cancel each other out, and that the insurance of Continental and Buckeye be pro-rated as if such "excess" clauses did not exist. This is Continental's position.

Before attempting to analyze the holdings of other courts in similar or somewhat similar cases of "double insurance," we wish to point out

that we believe that there is, or perhaps when stated more accurately, that there should be, a totally different approach by the courts in their construction of "double insurance" questions in those cases of property insurance as contrasted with cases of liability insurance. In the former, public policy would seem to dictate a construction against "double coverage" as eliminating possibilities of over-valuation, etc. In the latter we see no such public policy.

The case law as to liability insurance is unanimous to the effect that where two covering policies exist, neither of which has an "Other Insurance" clause, each company shares in the liability on a pro-rata basis dependent upon the limits of its policy. The case law is also clear that where the "double insurance," consists of policy A with no "Other Insurance" clause, and policy B with an "Other Insurance" clause, full force and effect is given to such clause.

The difficulties in interpretation have arisen when **both** policies contained "Other Insurance" clauses. These seem to fall into three general types: (a) a provision to the effect that in the event of other insurance, the loss shall be borne pro-rata dependent upon the monetary limits of coverage, which will hereafter be referred to as the pro-rata clause; (b) a provision that the policy shall be excess over any other valid and collectible insurance applicable to the liability, hereafter referred to as the excess clause, and (c) a provision that if there is other valid and collectible insurance, the policy shall not apply, hereafter referred to as the escape clause. Thus it is apparent that cases of "double insurance" have and will continue to arise involving pro-rata vs. excess, pro-rata vs. escape, excess vs. escape, excess vs. excess and escape vs. escape. Of course, no real problem would arise in pro-rata vs. pro-rata.

In their attempted solutions of these problems, the courts have evolved many varied and irreconcilable tests for determining which policy is "primary" and which "secondary." In all of these cases it was clear that full force and effect could not be given to the "Other Insurance" clauses of **both** policies if the other policy was considered as "other valid and collectible insurance." The assumption seems to have been made, therefore, and usually without discussion, that **one,** but not **both,** of such clauses must give way in order to establish one policy as the "primary" policy upon which the "Other Insurance" feature of the "secondary" policy might then become operative. e. g. Hartford Steam Boiler Inspection & Ins. Co. v. Cochran Oil Mill & Ginnery Co. 105 S. E. 856, 26 Ga. App. 288.

These decisions have caused one court to remark that the controversy is similar to that of which came first, the chicken or the egg. Zurich General Accident and Liability Ins. Co. v. Clamor, 124 Fed. (2nd) 717, 719. The instant case is a classic example of just that. If we strike out the "other valid and collectible insurance" feature of Continental's policy, thus establishing "primary" liability on the part of Continental to the extent of its policy limits, we can then give full force and effect to the "other valid and collectible insurance" feature of Buckeye's policy. But why, in the field of contract law, should not such clause in Con-

tinental's policy occupy the same legal status as the identical clause in Buckeye's policy? Both cannot stand as being in force and effect for reasons heretofore set forth. But why should the courts strain at gnats in an effort to choose between the two? Where policy indicates such a desirability as in the case of property insurance, we can understand such efforts. Frankly, we cannot in the case of liability insurance, especially when we consider that but for the happenstance of the existence of the policy No. 2, which insurance company No. 1 did nothing to bring into existence, company No. 1 would have had to stand the entire liability to the extent of its monetary limits, whereas the existence of No. 2 will effectuate some saving to No. 1 on a pro-rata basis in the event eventual liability be less than the aggregate limits.

In Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 Fed. (2nd) 958, the Oregon policy contained an escape clause and the U. S. F. & G. policy an excess clause. The court stated:

"It is plain that if the provisions of both policies were given full effect, neither insurer would be liable. The parties admit that such a result would produce an unintended absurdity * * *

"We have examined cases in other jurisdictions cited by counsel where closely similar or substantially identical disputes between insurance companies have arisen. These decisions point in all directions. One group indicates that the policy using the word 'excess' is secondary and that containing the language of the Oregon policy is primary. Examples of these decisions are cited on the margin. Their reasoning appears to us completely circular, depending as it were, on which policy one happens to read first. Other cases seem to recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg. See remarks of Judge Major in Zurich General Accident & Liability Insurance Company v. Clamor, 7 Cir., 124, F. 2d 717, 719. In this dilemma courts have seized upon some relatively arbitrary circumstance to decide which insurer must assume primary responsibility. Thus one group of cases fixes primary liability on the policy which is prior in date. Another group undertakes to decide which policy is the more specific, holding the one thought more specific to be primary. Another solution is represented by Maryland Casualty Company v. Bankers Indemnity Insurance Company, 51 Oh Ap 323, 200 N. E. 849, where it was held that the policy issued to the person primarily liable for the damage is the primary insurance. In sum, the cases are irreconcilable in respect both of approach and result.

"In our view it is immaterial which policy was written first; each was in effect when the accident occurred. The two policies appear to us to be equally specific, and no difficulty whatever would be encountered in applying either to the facts if the other did not exist. It is true that the U. S. F. & G. policy named Suter as the insured, and it was Suter's negligence that caused the accident. But Oregon's policy insured any person who might drive a car of the Redmond Motor Company with the latter's consent, and, as seen, Suter is an insured in this category.

"In our opinion the 'other insurance' provisions of the two policies

are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an 'other insurance' provision, the rule is to hold the two insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. Here, where both policies carry like 'other insurance' provisions, we think must be held mutually repugnant and hence be disregarded. Our conclusion is that such view affords the only rational solution of the dispute in this case. The proration is to be applied in respect both of damages and the expense of defending the suits."

If all aspects of this "double insurance" problem were a matter of first impression in Ohio, we would merely state that we agree with the basic reasoning in the Oregon case and terminate this opinion. We are met however with three Ohio cases which appear to follow a different approach. One being a Supreme Court case and one a decision of the Court of Appeals of this district, we are bound by their holdings to the extent, but of course only to the extent, that they constitute binding precedents as applied to the facts in the case at bar.

**Maryland Casualty Co. v. Bankers Indemnity Co., 51 Oh Ap 353** (Court of Appeals of Cuyahoga County), was a case where Maryland's policy contained an **excess clause** and Bankers' policy an **escape** clause. The accident involved a truck owned by transfer company but leased to freight company and claim was made against freight company. Maryland had issued a policy to freight company which included coverage of hired trucks but provided that if freight company was covered by "valid and collectible insurance" taken out by the owner of the hired truck, Maryland's coverage should be "excess." Bankers had issued a policy to transfer company which contained an omnibus clause extending coverage to persons operating the truck with consent of transfer company but providing that if such other person had "valid and collectible insurance," then such person "shall not be covered under this policy." Maryland was held solely liable and Bankers "escape" clause upheld, the court stating:

"Here we have a situation where each policy contains a provision in substantially the same language, which seeks to exclude its own company from liability under the established facts in the case. The collision having occurred while the freight company was operating in the course of its business a truck borrowed by one of its employees, the freight company is primarily liable, while the transfer company is not primarily liable. The freight company is covered by the borrowed car provision of the Maryland policy. Under these circumstance there is more reason to hold Maryland liable than Bankers."

We are somewhat at a loss to understand the rationale of the **Maryland case** since no claim of any liability was made against the transfer company and while the freight company was "covered by the borrowed car provision of the Maryland policy," it likewise was covered by the driving with permission provision of the Bankers' policy. In any event, we do not consider it as any binding precedent in the case at bar. Neither Continental nor Buckeye appear to approve of such holding. If we were to follow this holding, as we understand it, and extend it to

the facts of this case, we would be forced to conclude that Buckeye's coverage is "primary" and Continental's coverage "secondary," a conclusion contended for by neither insurance company.

**Travelers Indemnity Co. v. State Automobile Ins. Co., 67 Oh Ap 457** (Court of Appeals of Franklin County), was a case where Traveler's policy contained an **excess** clause while State Auto's policy contained an **escape** clause. The accident involved a car owned by the father and driven by the son. Travelers had issued a policy to the son for his own car which also covered the son with respect to his operation of "any other private passenger automobile" but provided that such coverage should be "excess insurance over any other valid and collectible insurance." State Auto had issued a policy to the father, including coverage to other persons using the automobile but providing that such extended coverage should not apply "with respect to any loss against which he has other valid and collectible insurance." The Court, in effect, held State Auto (escape clause) primarily liable with Travelers (excess clause) not liable at all since the amount claimed was less than the limits of State Auto's policy.

The exact reasoning by which the Court reached this conclusion is not set out although reference is made to the case of St. Paul Fire and Marine Ins. Co. v. Garza County Warehouse & Marketing Assn., 93 Fed. (2nd) 590, which stated that "excess" insurance was not "other" insurance so as to bring into effect an escape clause providing for avoiding liability in the event of "other insurance." Reference was also made to certain other out-of-state cases, including Michigan Alkali Co. v. Bankers Indemnity Ins. Co., 103 Fed. (2nd) 345; Grasberger v. Liebert and Obert, Inc., 335 Pa. 491, 6 A. (2d) 925. These cases hold the escape clause policy as primary and the excess clause policy as secondary on the basis that the excess policy is more "specific" in its coverage and that the specific controls over the general. To this same effect see Fageal v. Pacific Indemn. Co., 18 Cal. (2d) 73, 117 Pac. (2d) 661.

Since both the **Oregon case** and the **Travelers case** involved a case of **excess** vs. **escape**, it is clear that they are in conflict as to their ultimate holding and that the Travelers case, being a decision of the Court of Appeals of this county, is binding on this Court insofar as a case of **excess** vs. **escape** is concerned. It does not follow that it supports the claim of Buckeye in this, a case of **excess** vs. **excess**. The reasoning of the cases relied upon by the Court of Appeals, to the effect that the excess clause is a more "specific" provision as to coverage and controls over the escape clause, can have no possible application where both policies contain excess clauses in exactly the same words. This very question is discussed in Zurich General Accident & Liability Ins. Co. v. Clamor, 124 Fed. (2d) 717, 719. That was a case of **escape clause** vs. **excess clause**. The court concluded that the language of the escape clause was "general in its nature" while the language of the excess clause was "specific, or, at any rate, more specific than Zurich." The Court stated further:

"We think the logic of this reasoning is made apparent by assuming that neither of the policies contained an 'other insurance' provision, **or that both policies contained an 'other insurance' provision in exactly**

the same language. It could not be seriously argued, in our opinion, but that under either of such situations the two insurers would be liable in proportion to the amount of insurance provided by their respective policies. Here, however, as pointed out, the 'other insurance' provision of the two policies is different. In order to give effect to such difference, it is logical to conclude that Zurich is liable to the extent named in its policy, and that Car & General is liable only for any excess over that provided by Zurich." (Emphasis added.)

Employers Liability Assur. Corp. v. Pacific Employers Ins. Co., 227 Pac. (2d) 53, held that where the policies of two different insurance companies each contained excess insurance provisions, both insurers became concurrent insurers for liability of the insured. In this case the court concluded that neither policy could be considered as more specific than the other.

The third Ohio case is **Trinity Universal Ins. Co. v. General Accident, Fire and Life Assur. Corp., 138 Oh St 488.** This involved a contest between a pro-rata policy and an excess policy. The claim of liability was based on an accident involving a truck of the insured on the premises of the insured. Trinity's policy was issued covering the truck and contained a provision that in the event of other insurance, Trinity should not be liable "for a greater proportion of such loss than the applicable limit of liability * * * bears to the applicable limit of liability of all valid and collectible insurance against such loss."

General Accident's policy covered the premises of the insured but provided that if the accident was due to an automobile "then this policy * * * shall be excess insurance only over and above the amount of such other insurance and the corporation shall not be liable under this policy until such other insurance is completely exhausted." In a per curiam opinion specifically "limited to the circumstances peculiar to this particular controversy," the court held the Trinity policy to be "primary" liability and General Accident liable only in accordance with its "excess" clause. We quote from the opinion:

"First it must be observed that the coverage provided by the policy of the defendant company is general while that named in the policy issued by the plaintiff is specific. The latter is limited strictly to liability for bodily injury or death accidentally arising from operaton of the truck. The former covers liability for any accidental bodily injury, including death, occurring anywhere on the premises of the insured. Hence, under the general rule the specific insurer is primarily liable.

"The second thing of importance to be noted is that the policy issued by the defendant company is the only one mentioning excess insurance. Although the policy covers generally all bodily injuries occurring accidentally anywhere on the premises of the insured, it excludes any such injuries if caused by the truck on the premises at a time when there is other coverage on the truck. In that event liability is expressly limited to any excess above the maximum provided in the other policy. There is no contractual relation between the two insurance companies, and the defendant company was within its rights in issuing to the insured a policy containing this limitation. It is not contended that the

plaintiff company could not have ascertained this information when it later issued its policy."

As contrasted with the **Trinity case,** Continental's policy in the case at bar is not "the only one mentioning excess insurance." Here both policies contain identical language in this respect. Since the named insureds are not the same in this case, while both policies in the Trinity case had the same named insured, the reference to the ability of one insurer to obtain information as to a prior policy when it later issued its policy, could hardly be applicable here. Nor can we find any analogy between the fact pattern of premises coverage as contrasted with vehicular coverage on the question of comparison on the "specific" vs. "general" concept. We conclude therefore that the Trinity case not only is not a binding precedent in the instant case but actually is of little help in its disposition.

If we accept as established law in Ohio the theory that the policy which has the more "specific" coverage is "primary," and we are not sure it is firmly established, we cannot conclude that either policy is more "specific." In the last analysis the word "specific" is comparatively meaningless unless we define the area of comparison. Policy A may be more specific than policy B in certain respects and less specific in others. Buckeye claims that its policy is general and Continental's specific in that Buckaye's policy applied to any other automobile operated by Davis while, **so far as Davis was concerned,** Continental's policy applied only to the truck he was operating. It seems to us that Continental could, with equal logic, contend that its policy was general and Buckeye's specific in that the policy of Continental applied generally to any automobile rented by U-Drive It while Buckeye's policy applied only to the **specific** truck Davis was driving.

In the last analysis, potential liability in the event of negligent operation of the motor vehicle in question attached to both policies at exactly the same time and extended to the same acts, no more and no less. True, the policy of Continental extended coverage on the truck before that time. But the policy of Buckeye extended coverage to Davis before that time. The truck is a specific automobile. Davis is a specific person. Which is more "specific"? What are the comparative yardsticks one would employ in such a determination? We know of none. In our opinion any attempt to weigh the specifics of the two on the balance scale of the law would be at best an arbitrary conclusion not based on any logical premise.

What we have said in the preceding paragraph is equally applicable to the consideration of which policy was issued first and to those cases which hold that the policy first issued is the "primary" policy. e. g. Gutner v. Switzerland Gen. Ins. Co. 32 Fed. (2d) 700.

Likewise we find no real logical basis for the conclusion that the policy which has as its named insured the tort-feasor is primarily liable, e. g. United Pacific Ins. Co. v. Ohio Casualty Co., 172 Fed. (2d) 836, nor for exactly the opposite conclusion that the insurer of the specific automobile is primarily liable while the insurer of the specific driver is secondarily liable, e. g. Farm Bureau Mutual Auto Ins. Co. v. Preferred Accident Ins. Co. 78 Fed. Supp. 561.

Actually we believe that the solution to the problem involved in the instant case is relatively simple. Our opinion has been lengthy and somewhat involved only because of the many tests which have been applied in other cases and which we felt warranted discussion. Our study of these cases, not all of which need be cited herein, has in many ways reminded us of the visit of Alice to the "Never-Never Land." Many of these cases cite and rely at least in part on Hartford Steam Boiler Inspection & Ins. Co. v. Cochran Oil Mill & Ginnery Co., 105 S. E. 856, 26 Ga. App. 288, decided in 1921. Here the Court stated that "Before either policy can ride as **excess** insurance, the other must be made to walk as **primary** insurance." This we believe to be the cornerstone on which the entire opinion is then built. It assumes, however, that the only solution to the dilemma of "double insurance" involving a contest of **excess** vs. **excess** is to permit one policy to "ride as **excess** insurance" and to so ride on the back of another policy containing the same excess provision by converting one but **only** one policy to primary insurance, thus necessitating the employment of many artificial and arbitrary tests in order to arrive at such a pre-determined result.

Let us employ the same type of cornerstone and apply it to the facts in this case. "A policy cannot ride as **excess** insurance in the absence of another policy of **primary** insurance." In the case at bar there is no other policy of "primary" insurance. Both policies provide for "excess" insurance. By what right or authority can this Court by some magic wand change the terms of either contract? Such a provision is not unlawful nor against public policy. The solution, therefore, becomes simple. If we accept as a truism the fact, and it is a fact, that there can be no "excess" insurance in the absence of a "primary" insurance, it follows as night follows day that since neither policy by its terms is a policy of "primary" insurance, neither policy can **operate** as a policy of "excess" insurance. The policies are not changed. The "excess" provisions of the policy merely are inoperative as being impossible of accomplishment in the same way that such excess provisions are inoperative if there is no other insurance in effect. Instead of beginning our mental approach with one policy and then going in circles, we would approach the problem thusly. As to Continental, its policy cannot be "excess" because there is not in effect any other policy of "primary" insurance. The "excess" provision being inoperative and the general coverage language applicable, it is potentially liable to the full amount of its coverage to the same extent as if its policy contained no excess feature. Having so concluded, we do not say that because of such conclusion we may now apply the "excess" features of Buckeye's policy. To do so would make the result dependent upon which policy we considered first. Instead, and ignoring our conclusion as to the Continental policy, we consider the policy of Buckeye in the same way. By such approach we necessarily come to the same conclusion as to the Buckeye policy. Then, having concluded that **neither** "excess" feature is **operative** in the absence of "primary" insurance (not court created "primary" insurance but "primary" insurance under the specific terms of the other policy), we necessarily conclude that each is pro-rata liable within the

monetary limits of its policy for any damages and likewise is obligated to share pro-rata in the expense of defense.

In summary, therefore, on the issues presented in this action for declaratory judgment, we find the obligations of Continental and Buckeye under the terms of their respective policies of liability insurance to be as claimed by Continental, that is, that each insurance company has the obligation to share pro rata according to the limits of such policies in the liability, if any, and the defense of the claims being asserted by Mr. and Mrs. Kirby and by Nationwide against Davis, growing out of an accident on July 30, 1955, when Davis was driving a certain Chevrolet truck rented by Davis from U-Drive It. Costs are adjudged against defendant, Buckeye Union Casualty Co. Entry may be prepared accordingly, reserving exceptions.