DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Charles Horner, III, appeals from the decision of the Summit County Court of Common Pleas granting summary judgment to Nationwide Mutual Fire Insurance Co. ("Nationwide") and denying the counterclaim for declaratory judgment and motion for summary judgment filed by State Farm Mutual Insurance Company ("State Farm"). We affirm.
 I {¶ 2} The facts of this case are undisputed. On June 11, 2005, Dana Wood was operating a pickup truck owned by Justin Barnes. In addition to Wood, the truck was carrying three passengers: Barnes, Horner, and Tiffany Watson. While driving on Interstate 77 in West Virginia, Wood lost control of the truck, causing it to leave the road, flip over, and strike some trees. Horner was injured, and Watson died as a result of the accident. *Page 2 
 {¶ 3} Nationwide insured Barnes' pickup truck under an automobile policy (policy # 92 34 N 861703, hereinafter, the "Barnes policy") issued to Barnes that included bodily injury liability limits of $50,000 per person and $100,000 per occurrence. Nationwide also insured Wood under a separate automobile policy (policy # 92 34 N 601174, hereinafter, the "Wood policy") providing bodily injury liability limits of $25,000 per person and $50,000 per occurrence. State Farm insured Watson under an automobile policy that included uninsured/underinsured motorist ("UM/UIM") coverage of $100,000.
 {¶ 4} As a result of the accident, Nationwide paid out the limits of the liability insurance coverage available under the Barnes policy: $50,000 to Horner and $50,000 to Watson's estate. In addition, State Farm paid $50,000 to Watson's estate, which represented the $100,000 UIM motorist coverage limit net of the $50,000 payment Watson's estate received from Nationwide.
 {¶ 5} On March 2, 2007, Nationwide filed suit against Wood, Horner, and State Farm, seeking declaratory judgment pursuant to R.C. 2721.01, et seq. Nationwide sought a determination that it had no further obligations under the insurance policies it had issued to Barnes and Wood. Essentially, Nationwide contended that its contractual obligation was fulfilled by paying out the $100,000 total amount of coverage per occurrence provided by the Barnes policy, which was the larger of the two policies.
 {¶ 6} On April 2, 2007, State Farm counterclaimed for declaratory judgment seeking a determination that Nationwide needed to reimburse State Farm $25,000 of the UIM payment State Farm had made to Watson's estate. State Farm contended that Nationwide was obligated to pay the total amount of liability coverage limits provided by both of its policies combined; namely the $100,000 coverage per occurrence provided by the Barnes policy and the $50,000 *Page 3 
coverage per occurrence provided by the Wood policy. Under this obligation, in addition to the $25,000 reimbursement to State Farm, Nationwide would be required to pay another $25,000 from the Wood policy to Horner.
 {¶ 7} On September 28, 2007, both Nationwide and State Farm filed motions for summary judgment. Nationwide filed in opposition to State Farm's motion, while both State Farm and Horner filed in opposition to Nationwide's motion.
 {¶ 8} On April 11, 2008, the trial court granted summary judgment in favor of Nationwide, finding that Nationwide had completely fulfilled its obligations under both policies with its $100,000 payment. Horner timely appeals the trial court's decision and raises one assignment of error for our review. Nationwide raises one cross-assignment of error. State Farm is not a party to this appeal. We consider Nationwide's cross-assignment of error first to facilitate review.
 II Cross-Assignment of Error "THE APPEAL SHOULD BE DISMISSED BECAUSE IT FAILS TO COMPLY WITH APP.R. 3(D)[.]"
 {¶ 9} In its cross-assignment of error, Nationwide contends Horner's appeal should be dismissed because it fails to comply with App. R. 3(D). We disagree.
 {¶ 10} App. R. 3(D) provides, in part, that a notice of appeal "shall name the court to which the appeal is taken." Nationwide argues that Horner's appeal should be dismissed because although it was filed with the Clerk of Courts for Summit County, it mistakenly identifies the court to which the appeal is taken as the "Court of Appeals of Stark County, Seventh Judicial District." *Page 4 
 {¶ 11} The purpose of App. R. 3(D) is "to notify potential appellees of an appeal and advise them as to what orders the appellant is appealing from." State v. Dixon, 9th Dist. No. 21463, 2004-Ohio-1593, at ¶ 7, quoting Maunz v. Eisel, 6th Dist. No. L-02-1379, 2003-Ohio-5197, at ¶ 32, citing Parks v. Baltimore and Ohio RR. (1991), 77 Ohio App.3d 426,428.
 {¶ 12} App. R. 3(A) provides in part:
 "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."
 {¶ 13} The Ohio Supreme Court has indicated:
 "Pursuant to App. R. 3(A), the only jurisdictional requirement for the filing of a valid appeal is the timely filing of a notice of appeal. When presented with other defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted, and its decision will not be overturned absent an abuse of discretion." Transamerica Ins. Co. v. Nolan (1995), 72 Ohio St.3d 320, 322.
In determining whether an appellate court abused its discretion in dismissing a defective notice of appeal, the Court in Transamerica Ins.Co. determined that "the mistake was made in good faith, no prejudice accrued as a result, dismissal constituted a disproportionate sanction, the client was punished for the fault of his counsel and the dismissal frustrated the overriding objective of deciding cases on their merits." Id. Similarly, in the instant appeal, we cannot conclude that Horner's counsel acted in bad faith, nor that Nationwide was prejudiced as a result of counsel's error. Further, the adverse effects of dismissing the appeal would primarily be borne by Horner. Accordingly, dismissal would be a disproportionate sanction and would frustrate the objective of deciding cases on their merits. Therefore, Nationwide's cross-assignment of error is overruled. Having disposed of this procedural matter, we turn our attention to the merits of Horner's appeal. *Page 5 
 Assignment of Error "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE NATIONWIDE."
 {¶ 14} In his sole assignment of error, Horner contends that the trial court erred as a matter of law in granting summary judgment in favor of Nationwide, specifically in regard to the application of the "Other Insurance" language contained in both the Barnes and Wood policies. We disagree.
 {¶ 15} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 16} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 17} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ. R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead *Page 6 
must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
 {¶ 18} The interpretation of a clear and unambiguous insurance contract is a matter of law. Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm (1995), 73 Ohio St.3d 107, 108. When interpreting an insurance contract, it is incumbent upon this Court to "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy."Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11. Moreover, it is axiomatic that a policy will be construed liberally in favor of the insured and strictly against the insurer where the provisions at issue are reasonably susceptible of more than one interpretation. King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208,211.
 {¶ 19} However, when interpreting insurance policies, we presume the intent of the parties regarding coverage is reflected in the policy's language and review the policy to discover this intent. Kelly v. Med.Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus;Thorne v. Amerisure Ins. Co., 9th Dist. No. 21137, 2002-Ohio-6123, at ¶ 13, citing Minor v. Allstate Ins. Co., Inc. (1996),111 Ohio App.3d 16, 20. If a contract's terms are "clear and precise," the contract is not ambiguous. Pavlich v. Pavlich, 9th Dist. No. 22357, 2005-Ohio-3305, at ¶ 7. When the terms of a policy are unambiguous, this Court need not construe the policy in favor of the insured. See Felton v. NationwideMut. Fire Ins. Co., 9th Dist. No. 22518, 2005-Ohio-4792, at ¶ 18-19.
 {¶ 20} The issue before this Court is whether the trial court erred in granting summary judgment in favor of Nationwide by determining that Nationwide had fully satisfied its obligation when it paid Horner and Watson's estate each $50,000 pursuant to the liability limits of the Barnes policy. Horner contends that Nationwide is further obligated to pay him $25,000 *Page 7 
from the Wood policy. Similarly, although State Farm is not a party to this appeal, Horner is in agreement with State Farm that Nationwide is obligated to pay an additional $25,000 from the Wood policy to Watson's estate, which would be reimbursable to State Farm.
 {¶ 21} The relevant language from the Wood policy provides:
 "OTHER INSURANCE
 "1. In any loss involving the use of your auto we will be liable for only our share of the loss if there is other collectible liability insurance. Our share is our proportion of the total insurance limits for the loss.
 "2. For losses covered under `USE OF OTHER MOTOR VEHICLES,' our coverage is excess over any other collectible:
 "a) insurance;
 "b) self insurance;
 "c) proceeds from a governmental entity; or
 "d) source of recovery.
 "If more than one policy issued by us or a company affiliated with us applies on an excess basis to the same loss, we will pay only up to the highest limit of any one of them."
 {¶ 22} The Barnes policy provides: "OTHER INSURANCE
 "1. In any loss involving the use of your auto by you, we will be liable for only our share of the loss if there is other collectible liability insurance. Our share is our proportion of the total insurance limits for the loss. Any insurance we provide while your auto is being operated by someone other than you with your permission shall be excess over any other collectible liability insurance.
 "2. For losses covered under `USE OF OTHER MOTOR VEHICLES,' our coverage is excess over any other collectible:
 "a) insurance;
 "b) self insurance;
 "c) proceeds from a governmental entity; or *Page 8 
 "d) source of recovery.
 "If more than one policy issued by us or a company affiliated with us applies on an excess basis to the same loss, we will pay only up to the highest limit of any one of them."
 {¶ 23} Because Wood was operating Barnes' vehicle, the second paragraph of the "Other Insurance" section of the Wood policy applies. This paragraph provides that for losses incurred while Wood operated Barnes' vehicle, Nationwide's liability was limited to the excess over any other collectible insurance. Similarly, because Barnes' truck was being operated by Wood, the first paragraph in the "Other Insurance" section of the Barnes policy limits Nationwide's liability to the excess over any other collectible insurance. Therefore, according to the policy provisions, both policies apply on an excess, rather than on a primary coverage, basis.
 {¶ 24} Also, the "Other Insurance" sections of the Barnes and Wood policies both contain language to prevent the "stacking" of coverage from more than one policy issued by Nationwide or its affiliates. The Ohio Supreme Court has "used the term `stacking' to mean the lumping or adding together of payments, or the aggregation of coverage. * * * [T]he term `stacking' has been sufficiently defined to include within its meaning the pyramiding of coverage limits and policies issued by the same company." (Internal citation omitted.) Karabin v. State Auto. Mut.Ins. Co. (1984), 10 Ohio St.3d 163, 166, limited by Savoie v. GrangeMut. Ins. Co. (1993), 67 Ohio St.3d 500, at paragraph two of the syllabus.
 {¶ 25} The anti-stacking language in the two Nationwide policies is identical and provides:
 "If more than one policy issued by us or a company affiliated with us applies on an excess basis to the same loss, we will pay only up to the highest limit of any one of them." *Page 9 
Nationwide argues that because both the Barnes and Wood policies apply on an excess coverage basis, the anti-stacking provision is invoked, and Nationwide's total obligation for the accident is limited to the $100,000 liability limit of the Barnes policy. Therefore, Nationwide contends that the anti-stacking provision precludes it from having to pay an additional $50,000 according to the liability limit of the Wood policy.
 {¶ 26} However, Horner argues that for the excess coverage provisions to apply, there needs to be underlying primary coverage. Horner contends that because neither Nationwide policy covered the loss from the accident on a primary basis, the excess insurance clauses are mutually repugnant and have no legal effect. Horner reasons, therefore, that the anti-stacking provision was inapplicable because the clause specifically requires as a condition precedent that more than one Nationwide policy must apply on an excess basis for the provision to be invoked.
 {¶ 27} Both parties look to the rule established by the Ohio Supreme Court in Buckeye Union Ins. v. State Auto. Mut. Ins. Co. (1977),49 Ohio St.2d 213, for guidance. The Court held:
 "Where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies." Buckeye Union, 49 Ohio St.2d 213, at syllabus.
With respect to the motor vehicle accident in Buckeye Union, two separate insurance companies, Buckeye Union and State Auto, provided liability coverage on an excess basis. Neither company provided coverage on a primary basis. To determine the respective liability obligations of the two insurance companies, the Court adopted reasoning fromContinental Cas. Co. v. Buckeye Union Cas. Co. (1957), 143 N.E.2d 169. Id. at 217, fn.3. In Continental, the court indicated that, in the absence of primary insurance, the conflicting excess clauses of the two companies became inoperative and the general coverage provisions of the policies became applicable. *Page 10 
 Continental Cas. Co., 143 N.E.2d at 180. Applying this principle to the facts in Buckeye Union, the Court determined that both Buckeye Union and State Auto were liable for payment from their policies on a prorated basis. The Court held that the respective obligations of the two companies were proportionate to the amount of liability coverage provided by each company. Buckeye Union, supra.
 {¶ 28} Horner contends that, following Buckeye Union, the excess coverage clauses in the Nationwide policies are mutually repugnant and have no legal effect. As such, neither provision applies to the determination of Nationwide's payout obligation. Thus, because the excess coverage provisions are inoperative, the condition precedent to the anti-stacking provision, that more than one Nationwide policy apply on an excess basis, is not satisfied. Horner argues, therefore, that the anti-stacking provision does not serve to limit Nationwide's payout and that Nationwide is obligated to pay up to the liability coverage limits of both policies combined.
 {¶ 29} Nationwide argues, however, that even if the conflicting excess clauses are inoperative for the purpose of prorating coverage, they still apply for the purpose of satisfying the condition precedent in the anti-stacking clause. Nationwide points out that, otherwise, the anti-stacking clause would be a nullity. In the alternative, Nationwide argues that this Court should follow the approach taken by the Sixth District in Fear v. State Farm Fire Cas. (Feb. 27, 1987), 6th Dist. No. L-86-097, where the facts of the case may be distinguished from those in Buckeye Union.
 {¶ 30} In Buckeye Union, the Court considered conflicting excess coverage clauses contained in policies issued by separate insurance companies. The Fear court, in contrast, considered the issue of excess clauses in policies provided by the same insurance company, as in *Page 11 
the instant case. In researching other jurisdictions, the Fear court found that the approach taken in Buckeye Union "only applies to excess clauses contained in policies of different insurers. It does not apply to excess insurance clauses contained in policies issued by the same insurance company." (Citations omitted.) Fear at *3. The reason the approach does not apply where a single company provides coverage is that it simply need not apply. The purpose of the rule is to provide a method for prorating coverage between multiple policies where more than one insurance carrier is involved. There is no need to prorate, however, where only one insurance company is involved because the entire payout will come from the same company regardless of how it is prorated amongst the various policies. Therefore, where the same insurance company issues the policies, Fear found it unnecessary "to construe conflicting excess clauses contained in the policies." Id.
 {¶ 31} We find the common-sense logic in the Fear decision compelling. In the instant case, there simply is no need to prorate liability coverage obligations because both policies at issue are provided by Nationwide. Therefore, there is no need to construe the excess insurance clauses in the policies as having no legal effect. As such, the excess coverage clauses still apply to the determination of coverage provided pursuant to the "Other Insurance" provisions of the policies and satisfy the condition precedent of the Nationwide anti-stacking provisions.
 {¶ 32} Turning to the language of the anti-stacking provisions themselves, we agree with the trial court that the clauses clearly and unambiguously describe how Nationwide's liability is limited when more than one of its policies covers the same loss. Furthermore, it is consistent with the intention of the parties to so limit coverage. Otherwise, the anti-stacking provisions would almost never take effect. Therefore, under the facts of this case, the anti-stacking clauses validly limited Nationwide's payout obligation to the higher liability limit of the two policies. *Page 12 
Because Nationwide paid a total of $100,000 to Horner and Watson's estate according to the limits of the Barnes policy, it has no further obligation. As such, the trial court did not err in granting summary judgment in favor of Nationwide. Horner's sole assignment of error, therefore, is overruled.
 III {¶ 33} Horner's assignment of error is overruled. Nationwide's cross-assignment of error is likewise overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 13 
Costs taxed to Appellant.
MOORE, P. J. CONCURS