OPINION
{¶ 1} This is an appeal by appellee-appellant, Ohio Liquor Control Commission ("commission"), from a judgment of the Franklin County Court of Common Pleas, granting the motion of appellant-appellee, Castle King LLC ("Castle King"), to modify a consent order.
 {¶ 2} On November 24, 2004, agents from the Ohio Department of Public Safety Investigative Unit issued a violation notice to appellant-appellee, SGN International Oil Co. ("SGN"), alleging that SGN had permitted an electronic gambling device, identified as *Page 2 
"Gone Fishin II," on its permit premises in violation of Ohio Adm. Code 301:1-1-53. Castle King is the manufacturer of the Gone Fishin II machine. On February 15, 2005, the commission conducted a hearing regarding the alleged violation. On May 3, 2005, the commission issued an order finding SGN in violation of Ohio Adm. Code 4301:1-1-53; no penalty was imposed by the commission.
 {¶ 3} On May 20, 2005, SGN filed an appeal with the trial court from the order of the commission. The parties submitted briefs before the court, and by decision and entry filed January 23, 2007, the trial court reversed the commission's order, finding it was not supported by reliable, probative or substantial evidence. On February 16, 2007, the commission filed a notice of appeal from the trial court's January 23, 2007 entry.
 {¶ 4} On May 22, 2007, the parties filed with the trial court a settlement agreement and consent order ("consent order"). The signatories to the consent order were Castle King, SGN, the commission, and the Ohio Attorney General ("attorney general"). The consent order stated in part that Castle King "has presented to the Attorney General an updated version of the Chess Challenge II/Gone Fishin II game of skill, known as Match Um Up Fruit/Gems * * * for an evaluation and examination by the Attorney General and his expert" for purposes of determining whether the game is a skill-based amusement machine as defined under R.C. 2915.01(AAA). The consent order further provided that if the attorney general determined Match Um Up, and any future game, qualified as a game of skill under Ohio law, the attorney general would convey to Castle King in writing the attorney general's opinion that such game "as examined is a lawful game of skill under Ohio law." *Page 3 
 {¶ 5} As a result of entering into the consent order, the parties filed with this court an agreed motion to dismiss the commission's appeal. By journal entry filed May 25, 2007, this court dismissed the appeal.
 {¶ 6} On August 29, 2007, Castle King filed a motion to enforce the consent order entered on May 22, 2007. On September 17, 2007, the commission filed a memorandum in opposition, and a motion to vacate or stay enforcement of the consent order. Castle King filed a reply memorandum on September 19, 2007. On October 4, 2007, the trial court filed a decision and entry ordering enforcement of the consent order and outlining a certification process for Castle King's Match Um Up machines.
 {¶ 7} On October 23, 2007, the Ohio General Assembly passed Am. Sub. H.B. No. 177, which amended R.C. 2915.01(AAA) regarding the definition of a "[s]kill-based amusement machine." On October 24, 2007, in response to the passage of Am. Sub. H.B. No. 177, Castle King filed a motion to modify the consent order. Specifically, Castle King requested that the trial court amend its prior order and find that the game "Match Um Up, Version 1.0" meets the technical requirements of a skill-based amusement machine. On November 2, 2007, the commission filed a motion to vacate the trial court's decision and entry, pursuant to Civ. R. 60(B)(5), and the commission further requested that the court terminate the May 22, 2007 consent order requiring certification of Castle King's Match Um Up Version 1.0.
 {¶ 8} On February 6, 2008, the trial court filed a "final entry," finding that the commission had failed to provide any evidence that "Match Um Up, Version 1.0 does not meet the requirements of Section 2915.01(AAA), Revised Code as amended." Further, the entry provided that, because the General Assembly "has enacted legislation *Page 4 
amending Section 2915.01(AAA), Revised Code, the Consent Order is hereby modified to include only those findings set forth herein. All other terms of the Agreement and Consent Order are no longer valid." Thus, the court's entry modified its previous consent order to find that "Castle King's Match Um Up, Version 1.0 meets the legal requirements of a skill-based amusement machine in Ohio so long as prizes are limited to merchandise prizes or redeemable vouchers whose wholesale value does not exceed ten dollars for a single play."
 {¶ 9} On appeal, the commission sets forth the following three assignments of error for this court's review:
 FIRST ASSIGNMENT OF ERROR
 The Lower Court Lacked Jurisdiction To Reopen An Administrative Appeal, Closed Since May, 2007 Pursuant To The Settlement Agreement And Consent Order, To Decide An Issue Neither Pleaded Nor Argued In The Administrative Appeal, And Beyond The Scope Of The Underlying Administrative Proceeding.
 SECOND ASSIGNMENT OF ERROR
 Assuming Arguendo That The Lower Court Could Conduct New Proceedings On Issues Beyond The Scope Of The Administrative Appeal, It Misinterpreted And Misapplied H.B. 177.
 THIRD ASSIGNMENT OF ERROR
 Assuming Arguendo That The Lower Court Did Have Jurisdiction To Determine Issues Not Properly Before It, It Abused Its Discretion In Modifying The Consent Order To Find That Match Um Up Satisfies The Legal Requirements Of H.B. 177.
 {¶ 10} We will first address the commission's third assignment of error. Under this assignment of error, the commission asserts that the trial court erred in granting Castle *Page 5 
King's motion to modify the consent order. More specifically, the commission argues that the change in law brought about by the amendment of R.C. 2915.01(AAA) was a contingency negotiated and made a part of the consent order, and, thus, such event does not support modification.
 {¶ 11} Generally, in reviewing an appeal from an administrative agency under R.C. 119.12, a court of common pleas is required to affirm the agency's order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law, and an appellate court's role is to determine if the trial court has abused its discretion. Haddox v. Ohio Atty. Gen., Franklin App. No. 07AP-857,2008-Ohio-4335, at ¶ 18.
 {¶ 12} We note at the outset that appellees Castle King and SGN (collectively "appellees") have raised a jurisdictional issue, arguing that the consent order does not provide for a right to appeal by the commission and, therefore, that this matter is not properly before this court. We disagree.
 {¶ 13} In support of their argument, appellees rely upon this court's decision in "The Washington D" v. Ohio Dept. of Human Servs. (June 14, 2001), Franklin App. No. 00AP-939, in which we affirmed the trial court's dismissal of an appeal by the appellant nursing home, which had entered into a settlement agreement with an administrative agency. In that case, however, the parties signed a settlement waiver form under which the "appellant waived the `right to appeal the settlement under Chapter 119 of the Ohio Revised Code.'" Id.
 {¶ 14} In contrast, in the present case the consent order contains no language regarding a waiver of appeal rights by the parties. Paragraph 20 of the consent order provides in part: "The signatories agree to the continuing jurisdiction of Franklin County *Page 6 
Common Pleas Judge * * * and his successor in office with regard to questions of compliance with the terms of this Agreement and Consent Order."
 {¶ 15} Further, the commission has appealed from the trial court's decision and entry granting Castle King's motion to modify a consent order based upon Castle King's contention that a change of circumstances, i.e., an amendment to R.C. 2915.01(AAA), required the trial court to make the prior consent order comply with the amendments to the law. Ohio appellate courts have reviewed modifications to consent decrees as final appealable orders. See City of Cleveland v. Pure TechSys., Inc., Cuyahoga App. No. 83441, 2004-Ohio-2546, at ¶ 11 ("common pleas court's order modifying the consent decree is `an order that affects a substantial right made * * * upon summary application in an action after judgment,' and is therefore a final appealable order");Rabiner v. City Planning Comm. (Mar. 12, 1997), Hamilton App. No. C-960643 (affirming trial court's judgment modifying a consent order);Community Dev. Properties Cleveland, Inc. v. Griffin, Cuyahoga App. No. 87954, 2007-Ohio-835 (reversing trial court's denial of motion to modify agreed entry on the basis there existed a significant change of circumstances warranting modification of agreed entry). We therefore reject appellees' jurisdictional argument, and will consider the commission's contention that the trial court erred by granting Castle King's motion to modify the consent order.
 {¶ 16} In its motion to modify, Castle King requested that the trial court modify the consent order "to be consistent with the new law," i.e., the Ohio General Assembly's passage of Am. Sub. H.B. No. 177 on October 23, 2007. The legislature's passage of Am. Sub. H.B. No. 177 made changes to R.C. 2915.01(AAA). Specifically, prior to the amendment, R.C. 2915.01(AAA) provided in part that a "[s]kill-based amusement *Page 7 
machine" means a "skill-based amusement device," provided that: (a) the machine "involves a task, game, play, contest, competition, or tournament in which the player actively participates in the task, game, play, contest, competition, or tournament"; (b) the "outcome of an individual's play and participation is not determined largely or wholly by chance"; and (c) the "outcome of play during a game is not controlled by a person not actively participating in the game."
 {¶ 17} The version of R.C. 2915.01(AAA), as amended by Am. Sub. H.B. No. 177, provides a new definition of "skill-based amusement machine," defining such a machine to mean "a mechanical, video, digital, or electronic device that rewards the player * * * only with merchandise prizes or with redeemable vouchers redeemable only for merchandise prizes," provided that: (a) the wholesale value of a merchandise prize awarded from a single play does not exceed ten dollars; (b) redeemable vouchers awarded for any single play are not redeemable for a merchandise prize with a wholesale value greater than ten dollars; (c) redeemable vouchers are not redeemable for a prize that has a wholesale value of "more than ten dollars times the fewest number of single plays necessary to accrue the redeemable vouchers required to obtain that prize," and (d) any redeemable vouchers or merchandise prizes are distributed at the site of the amusement machine at the time of play.
 {¶ 18} The amended version of R.C. 2915.01(AAA) also provides in part that a device "shall not be considered a skill-based amusement machine and shall be considered a slot machine if it pays cash or one or more of the following apply": (a) the ability of a player to succeed "is impacted by the number or ratio of prior wins to prior losses of players playing the game"; (b) any reward of vouchers is not based solely on the *Page 8 
player achieving the object of the game or the player's score; (c) the outcome of the game, or the value of the voucher or prize awarded for winning the game, "can be controlled by a source other than any player playing the game"; (d) the success of a player "is or may be determined by a chance event that cannot be altered by player actions"; (e) the ability of a player to succeed "is determined by game features not visible or known to the player"; and (f) the ability of a player to succeed is "impacted by the exercise of a skill that no reasonable player could exercise."
 {¶ 19} The trial court, in granting Castle King's motion to modify the consent order, found that the commission "has not provided evidence to the Court that Match Um Up is no longer a skill-based amusement machine as a result of the amendment to R.C. § 2[9]15.01(AAA)." The court further found that, "[although the law has changed, there has been no evidence presented that Match Um Up fails to comply with the amended law, except for the provisions regarding cash payouts and the payout of prizes or vouchers."[1]
 {¶ 20} Courts have observed that "[a] consent order is a contract and is based on the agreement of the parties." State v. Mann, Trumbull App. No. 2007-T-0067, 2007-Ohio-6937, at ¶ 24. See, also, Save the Lake Assn.v. City of Hillsboro, 158 Ohio App.3d 318, 2004-Ohio-4522, at ¶ 14
(contract principles are applicable to an analysis of consent decrees). Under certain circumstances, "a consent decree may be modified or vacated by the court, absent the consent of all the parties," including instances in which further prospective application of the agreement is no longer equitable in light of subsequent *Page 9 
developments between the parties. Bodem v. Beals (Apr. 27, 1984), Ottawa App. No. OT-83-32.
 {¶ 21} In Rufo v. Inmates of Suffolk Cty. Jail (1992), 502 U.S. 367,112 S.Ct. 748, the United States Supreme Court held that "[modification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous," or "when a decree proves to be unworkable because of unforeseen obstacles." Id., at 384. The Supreme Court emphasized, however, that ordinarily "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." Id., at 385. See, also, Bldg. Constr. Trades Council v. NLRB (C.A.3, 1995), 64 F.3d 880, 888 ("Central to the court's consideration will be whether the modification is sought because changed conditions unforeseen by the parties have made compliance substantially more onerous or have made the decree unworkable"). A party seeking modification of a consent decree bears the burden of establishing that the changed circumstances are so significant as to render the decree inequitable. United States v.Rohm Haas Co. (M.D.Pa. 1997), No. 1:CV-92-1295, citing Rufo, supra, at 383, fn.7.
 {¶ 22} The commission's primary contention is that the trial court's decision granting Castle King's motion to modify the consent order is in direct contravention of the express language of the consent order. Specifically, paragraph 19 of the consent order states: "In the event the Ohio General Assembly enacts legislation that regulates games of skill, the signatories agree that this Agreement and Consent Order will terminate upon a final Order from Judge * * * or an Ohio court of competent jurisdiction." *Page 10 
 {¶ 23} The commission raised this argument before the trial court in its motion to terminate the consent order. The trial court, while acknowledging the language of the consent order, held: "[T]his Court does not find it equitable to terminate the Agreement and Consent Order when one small modification can accomplish the task at hand." Upon review, we disagree with the trial court's determination.
 {¶ 24} In seeking modification of the consent order, Castle King relied upon an event actually anticipated by the parties as reflected in paragraph 19 of the decree, i.e., "in the event" the legislature enacts legislation regulating games of skill. Further, Castle King agreed, under the terms of the consent order, that upon such an event the consent order "will terminate" upon a final order by the court. Because the issue of future legislative action regulating games of skill was not an unforeseen event but, instead, such possibility was specifically addressed under the consent order, appellees did not demonstrate a changed circumstance sufficient to justify the trial court's modification of the consent decree on equitable grounds. Rohm Haas, supra ("[i]f the complained-of-change was actually anticipated at the time the party seeking modification entered into the decree, then the motion should be denied"). See, also, NLRB v. Harris TeeterSupermarkets (C.A.D.C. 2000), 215 F.3d 32, 36 ("[s]elf-imposed hurdles and hurdles inherent in a consent decree's entry" do not warrant modification of consent decree). Rather, "[i]n light of the consent decree's own terms, the most equitable result is to hold the parties to their bargain." Henderson v. Morrone (C.A.3, 2007), 214 Fed.Appx. 209, 214-215. Accordingly, we find that the trial court erred in granting appellees' motion to modify the consent order, and in failing to grant the commission's motion to terminate. Thus, the commission's third assignment of error is sustained. *Page 11 
 {¶ 25} Under the first and second assignments of error, the commission argues that the trial court erred by reopening an administrative appeal, and by going outside the record to purportedly determine that Castle King's Match Um Up game constitutes a skill-based amusement machine under amended R.C. 2915.01(AAA). In light of our disposition of the commission's third assignment of error, the issues raised under the first and second assignments of error are rendered moot.
 {¶ 26} Based upon the foregoing, the commission's third assignment of error is sustained, the commission's first and second assignments of error are rendered moot, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
McGRATH, P.J., and FRENCH, J., concur.
[1] We note that the consent order does not contain any language indicating the parties' consent or agreement that "Match Um Up" is a skill-based amusement machine; rather, the consent order only provides that the machine has been presented to the attorney general "for evaluation and examination" by the attorney general "to determine if Match Um Up Version 1.00 is a skill based amusement machine pursuant to R.C. 2915.01(AAA)." *Page 1